Wachtler, J.
In this action a group of citizen taxpayers have asked the courts to declare chapter 455 of the Laws of 1977 unconstitutional. The chapter is not in effect and may never go into effect unless approved by the voters at the general election to be held on November 8, 1977. The action is an unusual one which raises a fundamental question concerning the proper role of the courts, that is, whether the courts should intervene in a pending election to determine whether a proposition, finally and irrevocably on the ballot, would be unconstitutional if the voters approve it.
We have concluded that under the State Constitution and applicable statutes it is neither necessary nor proper for the courts to express any view regarding the constitutionality of the proposed law on the eve of this election. Thus the determinations made by the courts below should be reversed and the complaint dismissed.
Chapter 455 of the Laws of 1977 authorizes, when effective, the creation of a State debt in the amount of $750,000,000. The State Constitution (art VII, § 11) provides, with exceptions not relevant here, that no debt shall be "contracted by or in behalf of the state, unless such debt shall be authorized by law, for some single work or purpose, to be distinctly specified therein. No such law shall take effect until it shall, at a general election, have been submitted to the people, and have received a majority of all the votes cast for and against it at such election”.
The Legislature passed chapter 455 on June 27, 1977. Section 3 of the law provides that it shall be submitted to the voters as a proposition in the following form: "Shall chapter [455] of the laws of nineteen hundred seventy-seven, known as the economic action program bond act for New York state of nineteen hundred seventy-seven, authorizing the creation of a state debt in the amount of seven hundred fifty million dollars ($750,000,000) to provide moneys for the acquisition, construction, reconstruction, establishment, improvement or rehabilitation of public capital facilities for industrial and community *529 development, tourism and recreation, conservation and environment and local transportation access, all in furtherance of economic development, be approved?” On July 19 the law was signed by the Governor. On August 8 the State Board of Elections certified the text of the proposition as it will appear on the ballot at- the general election to be held on November 8.
More than a month after the Board of Elections certified the proposition for the ballot, the plaintiffs commenced this action claiming that the debt authorized by the law is not for a "single work or purpose” as is required by the State Constitution (art VII, § 11). The complaint seeks a judgment declaring the statute unconstitutional. In addition the plaintiffs sought (1) an injunction prohibiting the Governor from enforcing the law if approved by the voters, (2) a mandatory injunction directing the defendant May, Chairman of the State Board of Elections, to rescind the certification and remove the proposition from the ballot and (3) reimbursement for counsel fees.
The defendants moved for summary judgment dismissing the complaint. The plaintiffs cross-moved for summary judgment granting the relief requested. However on the return date of the motion the plaintiffs stipulated to discontinue the action against the Chairman of the Board of Elections and the request for a mandatory injunction removing the proposition from the ballot. Accordingly, this portion of the complaint was dismissed.
The trial court then granted plaintiffs’ motion for summary judgment for the remainder of the relief requested. The proposed law was declared unconstitutional; the Governor was enjoined from enforcing it and the plaintiffs were awarded counsel fees.
The Appellate Division modified by denying plaintiffs’ application for counsel fees, but otherwise affirmed. One Justice dissented and voted to dismiss the complaint on the ground that the case, in its present posture, called for an advisory opinion.
It is fundamental that the "function of the courts is to determine controversies between litigants * * * They do not give advisory opinions. The giving of such opinions is not the exercise of the judicial function” (Matter of State Ind. Comm., 224 NY 13, 16 [Cardozo, J.]). This is not merely a question of judicial prudence or restraint; it is a constitutional command *530 defining the proper role of the courts under a common-law system (Matter of State Ind. Comm., supra). *
In a sense, of course, any decision a court may render is always advisory since it determines the legal rights and obligations of the parties. But the courts should not perform useless or futile acts and thus should not resolve disputed legal questions unless this would have an immediate practical effect on the conduct of the parties. The need for judicial intervention is obvious when, because of the actions of one of the parties, a dispute arises as to whether there has been a breach of duty or violation of the law. Then the courts can declare the rights and obligations of the parties, and if a breach is found, compel compliance, award damages or otherwise order appropriate action to be taken.
That is the tradition'al, but not the only way in which a genuine legal dispute may arise or be resolved by the courts. For instance, when a party contemplates taking certain action a genuine dispute may arise before any breach or violation has occurred and before there is any need or right to resort to coercive measures. In such a case all that may be required to insure compliance with the law is for the courts to declare the rights and obligations of the parties so that they may act accordingly. That is the theory of the declaratory judgment action authorized by CPLR 3001 (James v Alderton Dock Yards, 256 NY 298; Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR 3001, pp 355-357; 3 Weinstein-Korn-Miller, NY Civ Prac, par 3001.02; Borchard, Declaratory Judgments, 9 Brooklyn L Rev, pp 1-3).
Whether a judicial determination of this nature will have this effect is generally for the court to decide in the exercise of sound discretion (CPLR 3001). There are however certain basic principles. The fact that the court may be required to determine the rights of the parties upon the happening of a future event does not mean that the declaratory judgment will be merely advisory. In the typical case where the future event is an act contemplated by one of the parties, it is assumed that the parties will act in accordance with the law and thus the *531 court’s determination will have the immediate and practical effect of influencing their conduct (Borchard, Declaratory Judgments, pp 25-28, 75-76).
But a request for a declaratory judgment is premature if the future event is beyond the control of the parties and may never occur (Prashker v United States Guar. Co., 1 NY2d 584). Then any determination the court may make would be merely advisory since it can have no immediate effect and may never resolve anything (Borchard, Declaratory Judgments, pp 58-60). Thus it is settled that the "courts will not entertain a declaratory judgment action when any decree that the court might issue will become effective only upon the occurrence of a future event that may or may not come to pass” (3 Weinstein-Korn-Miller, op. cit., par 3001.09b). In accordance with this principle, we have held that the courts should not decide the constitutionality of a statute requiring mandatory arbitration in the event of a bargaining impasse, if there has been no impasse and no order to arbitrate (Park Ave. Clinical Hosp. v Kramer, 19 NY2d 958; Mount St. Mary’s Hosp. v Catherwood, 26 NY2d 493, 499). The same principle applies when a party challenges a statute which has not become effective. "[U]ntil the statute or ordinance is passed”, a declaratory judgment "would be premature” (Borchard, Declaratory Judgments, p 63; cf. Matter of McCabe v Voorhis, 243 NY 401, 411-412). For instance here, if the voters do not approve the proposition all the determinations which the courts have made in this case would be merely of abstract interest and moot. In addition when final approval rests with the voters, "the hazardous and inconvenient nature of such action, taken in the necessary haste of disposing of pre-election contests, makes it wise and expedient for the courts to refuse to intervene in advance of some threatened action” (Matter of McCabe v Voorhis, supra, p 412).
That is not to say that the courts may never consider the validity of proposed legislation. This has been done on several occasions, although with reluctance and then only incidentally to resolve a dispute as to whether the proposition should be placed or remain on the ballot (see, e.g., Matter of McCabe v Voorhis, supra; Matter of Tierney v Cohen, 268 NY 464; Matter of Osborn v Cohen, 272 NY 55; Matter of Mooney v Cohen, 272 NY 33; Johnson v Etkin, 279 NY 1; Matter of Stroughton v Cohen, 281 NY 343; Matter of Atwood v Cohen, 291 NY 484).
*532 These are not advisory opinions. The effect of the court’s determination in those cases does not depend on the outcome of the election. On the contrary, those orders have the immediate and practical effect of determining whether the proposition should be submitted to the voters, or whether all the expense and human effort involved in the election process would be wasted because of fatal defects in the law.
That is not what the plaintiffs have asked the courts to do in this case. Indeed, as noted, they have specifically abandoned their original demand for a determination that the proposition be removed from the ballot and have discontinued the action against the Chairman of the Board of Elections. Thus the proposition will be submitted to the voters and the courts have simply been asked to determine whether the statute if adopted would be unconstitutional. This is the kind of advisory opinion the Judges of this State have been unable to give since the abolition of the Council of Revision in the early part of the 19th century. It is not, as Judge Cardozo noted, the proper "exercise of the judicial function” (Matter of State Ind. Comm., 224 NY 13, 16, supra) and thus at this point we express no views as to the constitutionality or unconstitutionality of the proposition. Judicial intervention or expression would be premature pending the outcome of the referendum.
Accordingly, the order of the Appellate Division insofar as appealed from should be reversed and the case remitted to Supreme Court, Albany County, to dismiss the complaint.

 There was a time in the early history of the State when the Judges of the higher courts were designated members of the Council of Revision, which was required to determine the constitutionality of proposed legislation. This council, and the concept it represented, was abolished by the second State Constitution in the early part of the 19th century (see Lincoln, Constitutional History of New York, vol I, pp 592, 639, 743-749; vol II, pp 145-146).