OPINION OF THE COURT
Harold Hyman, J.
The issue, squarely and definitively presented, in the instant action for a declaratory judgment permanently enjoining the banking board from authorizing the establishment of a new *610 savings bank branch under its current rules, is the constitutionality and/or the validity of "Supervisory Policy SB 2” (Branching Policy for Savings Banks) (3 NYCRR Supervisory Policy SB 2.1, 2.3, 2.4, 2.5, 2.6, 2.7) as allegedly authorized by section 14 (subd 1, par [g]) of the Banking Law. The issue arises when, at the same time, one considers same from the viewpoint of its failing to provide for the right of a savings and loan association to make due objection and to be heard and considered on the issue of allowing a savings bank to open a branch office in a location already serviced by the savings and loan association.
Before considering the constitutional validity of the rule, it should first be presented factually so as to discern how, in what manner, under what circumstances and why it has now come to the forefront.
It is plaintiffs view that not mere self-protection, but the actual survival of its institution necessitates this application.
Plaintiff is a banking organization duly chartered in New York since 1888; it has three branches, two of which are located in Queens County and one in Brooklyn; its largest branch is located in Middle Village and has been thereat established since 1967.
Ridgewood Savings Bank has filed an application with the banking board for authority to establish a branch eight blocks from plaintiffs Middle Village office.
Plaintiff claims to be a locally oriented and controlled savings and loan association with deposits aggregating only $29,000,000 of which $15,000,000 thereof represents deposits in its Middle Village branch, the largest and most important of all of its three offices, since it represents 52% of all combined deposits and 47% of all of its accounts combined.
On the other hand, Ridgewood Savings Bank has seven branch offices and an aggregate of $978,000,000. Ridgewood seeks to provide for, through a Middle Village branch, banking services for 31,945 persons within the confines of the Middle Village area, now serviced by plaintiff.
It is therefore quite apparent that a Goliath (Ridgewood) has once again been pitted against a David (plaintiff Cross County) in an apparently relatively small arena; the latter fighting for its life, the former attempting to engulf the spoils in its financially strong and extensive tentacles through legal channels, namely the rules of the banking board.
*611 Subdivision 1 of section 2 of the Banking Law defines a bank to be a corporation, other than a trust company, organized under or subject to the provisions of article 3; subdivision 4 of section 2 defines a savings bank and subdivision 8 of section 2 defines a savings and loan association.
For all intents and purposes there is a distinction, merely because of the title, but without any real difference between them insofar as the public knows or is concerned. Certain rules have been promulgated by the banking board, pursuant to section 14 of the Banking Law, which provides that they be promulgated: — ”1. For the purpose of effectuating the policy declared in section ten of this article [so that the business of all banking organizations shall be supervised and regulated through the banking department in such manner as to insure the safe and sound conduct of such business, to eliminate unsound and destructive competition among such banking organizations and thus to maintain public confidence in such business and protect the public interest and the interests of depositors, creditors, shareholders and stockholders], the banking board shall have power * * * to make, alter and amend rules and regulations not inconsistent with law * * * Without limiting the foregoing power, resolutions or rules or regulations may be so adopted for the following specific purposes: * * * (g) To approve the opening of branch offices by banking organizations as authorized by this chapter.” (Banking Law, § 14, subd 1, par [g]; emphasis supplied.)
Subdivision 11 of section 2 of the Banking Law defines "Banking organization” to be: "The term, 'banking organizations,’ when used in this chapter, means and includes all banks * * * savings banks * * * savings and loan associations”. (Emphasis supplied.)
It is also noteworthy that section 14 (subd 1, par [g]) of the Banking Law makes no distinction between savings banks and savings and loan associations, nor does it directly grant any such rule-making power to differentiate to the banking board or the Superintendent of Banks. To the contrary, it distinctly makes no such distinction, classifying them both similarly as "banking organizations” (Banking Law, § 2, subd 11).
Further indicative of the fact that the Legislature never intended to differentiate between savings banks and savings and loan associations, is the statutory provision (Banking Law, § 29), relative to procedures to obtain "branch offices”, which, in part, provides: "When a banking organization * * * to open *612 a branch office * * * shall make written application for leave to do so, the superintendent, if he shall find upon investigation that the public convenience and advantage will be promoted * * * shall submit such application to the banking board * * * If the superintendent shall not find that public convenience * * * will be promoted by the opening of such branch office”. (Emphasis supplied.)
It is to be noted that for the salutary purpose of promoting sound organizations and preventing, nay eliminating "unsound and destructive competition among such banking organizations” the Legislature permitted the banking board to set up and make rules. (Banking Law, §§ 14,10.)
In setting up its rules the banking board, without authority, without any legislative direction or mandate, but of its own accord, differentiated among banking organizations insofar as "branching-out” was concerned. It provides a "Supervisory Policy” wherein under certain conditions it authorizes savings banks to open a new branch, and under certain circumstances allows a savings and loan association to do likewise (3 NYCRR Supervisory Policy SB 2.1, 2.7; 3 NYCRR Supervisory Procedure SL 101.1, 101.3).
The banking board rules prescribed in the aforesaid supervisory policy sections for savings banks do not perform the task for which the Legislature intended. Under that section only another nearby savings bank is taken into consideration under its protective arm against possible "unsound and destructive competition among such banking organizations.” (Banking Law, § 10.) It does not make any provision for the protection of a savings and loan association against any such "unsound and destructive competition” in that area by another "banking organization” if it be a savings bank. The lack of such protection runs throughout SB 2, leaving the smaller banking organizations, savings and loan associations, subject to indiscriminate destruction by the savings bank and without voice against such destruction, without any administrative means of protecting themselves from destruction; the savings and loan association is ignored in such administrative consideration; only the savings bank "class” is protected from another savings bank.
It is just such lack of evenhandedness which plaintiff now attacks, maintaining that such rule or rules violate the salutary inherent concept of the Banking Law and the powers *613 granted to the banking board and the superintendent (Banking Law, §§ 10, 13, 14).
It is the opinion of this court that such rules (SB 2 and SL 101), separate rules for the establishment of a savings bank and a savings and loan association branch are in conflict with, out of harmony with, and violate the direct and unequivocally stated purpose contained in the statute, namely, "to eliminate unsound and destructive competition among such banking organizations”. (Banking Law, § 10.)
As was stated by the Court of Appeals in Matter of Jones v Berman (37 NY2d 42, 53): "Administrative agencies can only promulgate rules to further the implementation of the law as it exists; they have no authority to create a rule out of harmony with the statute” (emphasis supplied) and should the agency create such a rule out of harmony with the statute, particularly a purpose expressly therein stated, the rule is invalid as being beyond authority (Matter of Jones v Berman, supra; Matter of Bates v Toia, 60 AD2d 459, 462, 463).
Such a conflict exists herein. To merely allow a "savings bank” to meet all other requirements in order to branch out, and to permit only another "savings bank” to raise objections thereto without affording a very immediately concerned savings and loan association’s rights to be asserted, heard, and cited for such purpose, so that it could present its proof on the. statutory issue unequivocally stated and provided for by the legislation, namely "to eliminate unsound and destructive competition among such banking organizations” is in the opinion of this court, beyond the statutory power granted to the banking board and therefore invalid (Matter of Bates v Toia, supra, pp 462, 463).
Section 11 of article I of the New York State Constitution provides that no person shall be denied the equal protection of the law, nor be subject to any discrimination in his civil rights by any other person, or by the State - or any agency of the State. The very essence of such constitutional right, the very heart thereof mandate that all persons similarly situated must be treated alike, unless there is some rational or reasonable basis (People v Ditniak, 28 NY2d 74) ultimately turning on similarity or dissimilarity of rights differentiated by statute and on reasonableness of classification when different methods are used to affect different classes (8200 Realty Corp. v Lindsay, 27 NY2d 124, app dsmd 400 US 962).
This court is of the belief that the rights of both savings *614 banks and savings and loan associations are definitively identical and similar when it pertains to a branch being allowed or considered, and therefore by setting up two sets of methods, so as to deprive a savings and loan association of the right to object to a savings bank being allowed to come in and compete in its own small area with it, or even vice versa, is not only invalidly discriminatory but fails to afford equal protection to one seeking protection against such unsound destructive competition.
The contention of the defendant is that the plaintiff seeks relief prematurely contending that the application of the savings banks may not be granted by the board. This is not an answer to the problem, for even though the courts should not perform useless or futile acts and should not resolve disputed legal questions unless such resolution will have an immediate practical effect on the conduct of the parties (New York Public Interest Research Group v Carey, 42 NY2d 527, 530, 531), nevertheless where the future event, as now is in the making and is contemplated by one of the parties, it is assumed that the parties will act in accordance with the law and that the court's determination will have the immediate and practical effect of influencing their conduct (New York Public Interest Research Group v Carey, supra, pp 530, 531). The present situation is one where declaratory judgment is not premature since the furture event is imminent and is not beyond control of the parties. Not only is the future event within the control of the banking board, but the act of the banking board based upon a rule invalid in its inception would only result in a futile act regardless of what the outcome may be by the board considering the application.
Plaintiff’s application for a preliminary injunction is granted on condition that it file a surety bond in the amount of $10,000 in accordance with CPLR 6312 (subd [b]) and that it place this case on the Trial Calendar for trial promptly.
Defendants’ cross motion to dismiss the complaint is denied.