OPINION OF THE COURT
Chief Judge Wachtler.
The plaintiffs, involved in a licensing dispute before a Federal agency, have asked the courts of this State to answer a question of State law which may be of use in the pending administrative proceeding. Plaintiffs here seek nothing more than an advisory opinion for possible use by a Federal agency —relief beyond the judicial function, and inconsistent with the constitutional mandate of this court. Neither the Federal agency nor the Long Island Lighting Company (LILCO)[1] can by agreement confer subject matter jurisdiction upon this court where there is none.
*352 I
In the aftermath of the Three Mile Island nuclear accident, as part of the Nuclear Regulatory Commission Authorization Act for fiscal year 1980 (Pub L 96-295), Congress made the existence of an adequate Emergency Response Plan (Emergency Plan) a prerequisite to the issuance of an operating license to a nuclear facility. Section 109 (b) (1) (B) (i) (II) of that act provides that a State, local or utility Emergency Plan may be adequate to satisfy the statute if it "provides reasonable assurance that public health and safety is not endanger ed by operation of the facility concerned.”
It is well known that in the case of LILCO Shoreham nuclear facility, the State and local governments have refused to submit an Emergency Plan, and maintain that no plan would provide adequate protection in the case of a nuclear accident; LILCO, therefore, has devised its own Emergency Plan. Briefly stated, the version of the LILCO Emergency Plan in the record before the court calls for formation of a private local emergency response organization (LERO), made up of LILCO employees and volunteers, to implement the Emergency Plan. The plan envisions six general activities to be performed by LERO in the case of an emergency: (1) accident assessment; (2) notification of the public; (3) recommendation of protective measures within a 10-mile "plume exposure pathway emergency planning zone”; (4) recommendation of protective action within a 50-mile "ingestion exposure pathway”; (5) recommendation of steps and procedures for reentry and recovery after the accident; and (6) facilitation of the flow of traffic if evacuation is necessary. The plan also provides that if Government authorities take action to protect the public "these actions will take precedence over LERO actions.”
The dispute in this case between plaintiffs Governor Cuomo, the County of Suffolk, and the Town of Southampton (together, the Government) and defendant LILCO finds its roots in a pending Nuclear Regulatory Commission (NRC) proceeding in which LILCO is seeking an operating license for its Shoreham facility. During the initial licensing proceeding before the Atomic Safety and Licensing Board,[2] the Govern *353 ment argued that LILCO was without authority under New York State law to implement the proposed Emergency Plan. The Atomic Safety and Licensing Board then requested that the parties go to New York State court to find out the answer.
The present actions were then brought in Supreme Court,[3] with each plaintiff alleging, in essence, that LILCO was without authority under State law to implement the Emergency Plan, and that implementation would be an illegal usurpation of the Government’s police power. The actions were consolidated, LILCO moved to dismiss, and the Government cross-moved for summary judgment. The trial court, after first holding that a justiciable controversy was presented, granted partial summary judgment to the Government, agreeing that LILCO was without authority under State law to implement the plan, and that to do so would be a usurpation of the Government’s police power. The Appellate Division affirmed, and subsequently certified to this court the question of whether the order of affirmance was properly made.
Following the decision in Supreme Court, the Atomic Safety and Licensing Board held that the Emergency Plan did not meet agency regulations, because LILCO had not shown that the plan could be lawfully implemented. The Atomic Safety and Licensing Appeal Board affirmed. The NRC then reversed, however, and remanded the case to the Atomic Safety and Licensing Board with instructions to consider what has become known as the "realism doctrine.” This doctrine, which was made part of recently promulgated amendments to NRC regulations, states that: "In making its determination on the adequacy of a utility plan, the NRC will recognize the reality that in an actual emergency, state and local government officials will exercise their best efforts to protect the health and safety of the public. The NRC will determine the adequacy of that expected response, in combination with the utility’s compensating measures, on a case-by-case basis * * * [I]t may be presumed that in the event of an actual radiological emergency state and local officials would generally follow the utility plan [if no government plan exists]” (10 CFR 50.47 [c] [1] [iii] [B]). Additionally, in its comments on the new regulations the NRC instructed that: "The presiding Licensing *354 Board should not hesitate to reject any claim that state and local officials will refuse to act to safeguard the health and safety of the public in the event of an actual emergency. In actual emergencies, state, local, and federal officials have invariably done their utmost to protect the citizenry, as two hundred years of American history amply demonstrates” (52 Fed Reg 42085 [Nov. 3, 1987]).
Finally, upon remand, and after the present case was argued in this court, the Atomic Safety and Licensing Board again held that the Emergency Plan could not be safely implemented. This decision has not yet been appealed to the Atomic Safety and Licensing Appeal Board.
II
The courts of New York do not issue advisory opinions for the fundamental reason that in this State "[t]he giving of such opinions is not the exercise of the judicial function” (Matter of State Indus. Commn., 224 NY 13, 16 [Cardozo, J.]). The role of the judiciary is to " 'give the rule or sentence’ ” (Matter of Richardson, 247 NY 401, 410), and thus the courts may not issue judicial decisions that "can have no immediate effect and may never resolve anything” (New York Pub. Interest Research Group [NYPIRG] v Carey, 42 NY2d 527, 531). It is therefore settled law that an action "may not be maintained if the issue presented for adjudication involves a future event beyond control of the parties which may never occur” (e.g., American Ins. Assn. v Chu, 64 NY2d 379, 385; NYPIRG v Carey, 42 NY2d 527, 531, supra; Matter of State Indus. Commn., 224 NY 13, 16, supra). This rule not only prevents dissipation of judicial resources, but more importantly, it prevents devaluation of the force of judicial decrees which decide concrete disputes.
Applying these principles in American Ins. Assn. v Chu (supra) and NYPIRG v Carey (supra), the court held that where the injury to the plaintiff was contingent upon the enactment of legislation in the future, the dispute was not justiciable. In Matter of State Indus. Commn. (supra), the same rule was applied in an administrative context, and the court refused to rule on the legality of regulations under consideration but not yet promulgated by the State Industrial Commission.
In the present case, Government argues that LILCO’s implementation of the Emergency Plan would usurp Government’s *355 police power. However, this potential encroachment can occur only if the NRC approves the plan, which it has not yet done and which it may never do. In addition the Emergency Plan has been revised six times during the pendency of this litigation alone — once after the case was argued before this court. Therefore, even if a plan is at some point approved, it certainly cannot be known at this point whether any final version of the plan would pose the threat that Government objects to here. Thus the potential for encroachment of which Government complains is contingent upon unfinished Federal administrative decisions, and presents a nonjusticiable dispute under Matter of State Indus. Commn. (supra), American Ins. Assn. v Chu (supra), and NYPIRG v Carey (supra).
Nor does the distinction drawn in NYPIRG v Carey, between a bare challenge to the legality of a statute, and a challenge incidental to a dispute "as to whether the proposition should be placed or remain on the ballot” (id., at 531), find application here, although apparently relied upon by the lower courts in this case. As explained in NYPIRG v Carey (supra), the latter situation, in which a court may rule albeit "with reluctance” on pending legislation, does not call for an advisory opinion because: "The effect of the court’s determination in those cases does not depend on the outcome of the election. On the contrary, those orders have the immediate and practical effect of determining whether the proposition should be submitted to the voters”. (Id., at 532; see also, Matter of Cantrell v Hayduk, 45 NY2d 925, 926 [a court’s decision that a proposition should be stricken from the ballot has an "immediate effect”].)
The present case does not fall within the NYPIRG v Carey exception for at least two fundamental reasons. First, in every case relied on in NYPIRG v Carey, an order was sought which, if granted, would indeed have had the real and immediate effect of striking the complained-of proposition from the ballot (see, Matter of McCabe v Voorhis, 243 NY 401; Matter of Tierney v Cohen, 268 NY 464; Matter of Osborn v Cohen, 272 NY 55; Matter of Mooney v Cohen, 272 NY 33; Johnson v Etkin, 279 NY 1; Matter of Stroughton v Cohen, 281 NY 343; Matter of Astwood v Cohen, 291 NY 484). In contrast, here the court is not requested to order that the Emergency Plan be stricken from the record before the NRC, or for an order that LILCO withdraw it. Nor would such orders in practice be anything more than hortatory. The NRC is not a party in this court. An order that LILCO withdraw the Emergency Plan *356 would not require that the NRC allow withdrawal — it could simply refuse LILCO’s request. This case, therefore, is not analogous to the "striking from the ballot” cases distinguished in NYPIRG v Carey (supra, at 532); when the court spoke there of the real and immediate effect of a judicial decision, it in no sense referred to the possible result of a nonbinding request made to a Federal administrative agency.
Second, even where the court has allowed a challenge to a proposition before it has been enacted, the court could be satisfied that it was assessing the final form of the document (e.g., Matter of McCabe v Voorhis, supra; Matter of Astwood v Cohen, supra). There certainly is no assurance that what will be the final version of the Emergency Plan is under review here; in fact, the Emergency Plan has again been revised since this case was argued before the court. Nor can it be known to what extent the NRC will finally apply the realism doctrine to the Emergency Plan. It is unknown, therefore, what part of the Emergency Plan LILCO would really be expected by the NRC to carry out. To analogize this case to the cases distinguished in NYPIRG v Carey (supra), it is as if the court here was asked to issue a nonbinding request that a proposition be stricken from the ballot, while the precise language of the proposition — indeed, even the substance — was still being negotiated. This case, therefore, in no manner fits within the "strike from the ballot” exception explained in NYPIRG v Carey, and this dispute is nonjusticiable due to its dependence upon as yet uncertain decisions of a third party, the NRC.
It is equally important that, apart from the pendency of the NRC proceedings and the demonstrated mutability of the Emergency Plan, this case squarely implicates Chief Judge Cardozo’s remonstrance that the New York courts "are not adjuncts or advisors * * * of other agencies of government”, and his warning that the traditional judicial function "may be destroyed by turning the power to decide into a pallid opportunity to consult and recommend” (Matter of Richardson, 247 NY, at 410, 411, supra). Thus the court held in Matter of Richardson (supra), that a Judge could not properly be empowered to give "mere advice to the Governor, who may adopt * * * modify * * * or reject * * * altogether” the Judge’s findings on whether a public official should be removed from office (id., at 410).
Similarly, in Matter of State Indus. Commn. (224 NY 13, *357 supra), the court held that it was without jurisdiction to resolve a dispute within the State Industrial Commission. In that case the members of the Commission, "debating their powers among themselves” regarding the legality of a proposed regulation requiring insurance companies to make payments into a certain State fund, asked the court to resolve the issue. The court refused, holding that the Commission was seeking an advisory opinion that would bind "no one and settl[e] nothing” (id., at 16). Stating that it was outside the judicial function to "tender * * * advice which may be accepted or rejected” (id., at 17), the court held that it was impermissible for Judges to act, " 'not as a court, but as the constitutional advisors of the other departments’ (Opinion of Justices, 126 Mass. 557, 563 * * *)” (id.).
In the case now before us it was a subdivision of the NRC that originally suggested that the Government and LILCO go to State court to determine whether LILCO could implement the plan consistently with State law. The NRC, however, is not a party to the action in this court. It is not bound by any determination made here. For this and numerous other reasons,[4] the court could not enjoin the NRC from considering the present Emergency Plan, or from approving it.[5] Thus upon inspection no decision here could prevent the NRC from simply disregarding this court’s interpretation of State law.
There can be no doubt that the substantive question of whether any Emergency Plan for the Shoreham nuclear power plant is feasible and implementable presents highly important and emotional issues of public policy and safety. As to all aspects of this question, however, it is the NRC, subject to judicial review in the Federal courts, who will speak "the rule or sentence”; any decision in the present case, while it may provide guidance and indeed be helpful to the NRC, would in the end bind "no one and settl[e] nothing” (see, Matter of State Indus. Commn., supra, at 16). What the parties request, therefore, is a nonbinding advisory opinion for the *358 edification of the NRC. This is not an exercise of the judicial function and is outside the subject matter jurisdiction of this court.
Accordingly, the order of the Appellate Division should be reversed, the certified question answered in the negative, and the complaints dismissed.
Judges Simons, Kaye, Alexander, Titone, Hancock, Jr., and Bellacosa concur.
Order reversed, without costs, certified question answered in the negative and complaints dismissed.

. In both the trial court and at the Appellate Division, LILCO urged nonjusticiability. In this court it abandoned that argument.

. The Atomic Safety and Licensing Board is part of the NRC. Atomic Safety and Licensing Board decisions are appealable to the Atomic Safety and Licensing Appeal Board, whose decisions are in turn reviewable by the Commission itself.

. NY Constitution, article VI, § 3 (b) (9) in certain instances allows this court to answer questions certified to it by the United States Supreme Court, United States Courts of Appeals, or the appellate courts of last resort of another State when those answers would be determinative of actions pending before them. This constitutional provision does not apply here.

. Among them are the fact that the Federal Courts of Appeals have exclusive jurisdiction over most final NRC decisions involving the licensing of nuclear reactors (28 USC § 2342 [4]; 42 USC § 2239), and, in any event, because the NRC has not yet reached a decision on the implementability of the Emergency Plan, it is unlikely that any NRC decision is ripe for review (see, Church of St. Paul & St. Andrew v Barwick, 67 NY2d 510).

. Nor would this court’s decision bind the NRC upon judicial review in Federal court of its decision on whether to license Shoreham, again because the NRC is not a party here.