**CREDIT SUISSE SECURITIES (USA) LLC and Deutsche Bank Securities, Inc., Appellants,**

v.

**HUNTSMAN CORPORATION, Appellee.**

No. 09–08–443 CV.

Court of Appeals of Texas, Beaumont.

Submitted Oct. 21, 2008.

Decided Oct. 23, 2008.

---

Mark K. Glasser, James Edward Maloney, David D. Sterling, Stephen G. Tipps, Danny David, Karlene Dunn Poll, Tracy N. LeRoy, Baker Botts L.L.P., Houston, Richard W. Clary, Robert H. Baron, Julie A. North, Gary A. Bornstein, Cravath, Swaine & Moore, LLP, New York City, NY, Ray A. Burgess, Hope & Causey, P.C., Conroe, for Appellants.

Robin C. Gibbs, Kathy Patrick, Laura Kissel, Jeremy Doyle, Gibbs & Bruns LLP, Houston, Dan Downey, Dan Downey, P.C., Austin, Michael J. Truncale, Orgain, Bell & Tucker, Beaumont, David M. Gunn, Beck, Redden & Secrest, Houston, for Appellee.

Before McKEITHEN, C.J., KREGER and HORTON, JJ.

## OPINION

STEVE McKEITHEN, Chief Justice.

Credit Suisse Securities (USA) LLC and Deutsche Bank Securities, Inc., (collectively, "the Banks") appeal the granting of a temporary injunction in a suit brought against the Banks by Huntsman Corporation. *See* Tex. Civ. Prac. & Rem.Code Ann. § 51.014(a)(4) (Vernon 2008). We hold that the trial court did not abuse its discretion by issuing the temporary injunction. Accordingly, we affirm the trial court's order.

### Background

The present suit arises from the pending merger between Huntsman and Hexion Specialty Chemicals, Inc. The merger is set to close on October 28, 2008, and the Banks are obligated to fund the transaction subject to certain conditions as provided in a commitment letter dated July 11, 2007. One of the conditions required by the commitment letter as a condition precedent to funding is the delivery of reasonably satisfactory solvency certificates for the company formed in the merger.

Huntsman and Hexion, and Hexion's related entities (including Apollo Global Management, LLC), were parties to a suit in Delaware that addressed the pending merger. On September 29, 2008, the Delaware Chancery Court issued an opinion stating that Hexion had failed to demonstrate the existence of a material adverse effect in order to negate Hexion's obligation to close, that Hexion had engaged

in a knowing and intentional breach of the merger agreement, and that Hexion had pursued a path designed to avoid the consummation of financing the transaction. The court further found that Hexion failed to meet its obligations to Huntsman under the merger agreement's notification covenant and that filing the Delaware lawsuit had placed the commitment letter in peril.

In Huntsman's present suit against the Banks, filed in Texas, Huntsman asserts claims against the Banks for common law and statutory fraud, tortious interference with an earlier merger that Huntsman cancelled in order to accept Hexion's proposal, tortious interference with the Hexion merger agreement, negligent misrepresentation, and civil conspiracy. Huntsman seeks temporary and permanent injunctive relief in addition to money damages. According to Huntsman, monetary damages for the tortious interference is an inadequate remedy because the committed financing for the merger cannot be replicated. Huntsman alleges the Banks have contrived to "run out the clock" on the commitment letter in order to force its expiration before Huntsman can exercise its rights, including its right to present a solvency certificate.

After taking evidence and hearing the arguments of counsel, the trial court enjoined the Banks from filing any declaratory judgment suit "that directly or indirectly alleges that the combination of Hexion and Huntsman would be insolvent or would be in any way incapable of performing its obligations to pay off the notes to the banks."[1]

The Banks raise five issues in their appeal: (1) Whether the trial court erred and abused its discretion by misapplying the law to established facts in holding that the Banks' prospective lawful conduct of filing a legitimate lawsuit can be an act of tortious interference; (2) Whether the trial court erred and abused its discretion by issuing an anti-suit temporary injunction when there was no showing of the limited circumstances in which an anti-suit injunction is permitted, and where the injunction extends to prohibit federal lawsuits, which the court lacks the power to enjoin; (3) Whether the trial court erred and abused its discretion by issuing a temporary injunction that alters, rather than preserves, the status quo and essentially grants to the plaintiff all of the injunctive relief that it would be entitled to if it were successful in a trial on the merits without requiring it to prove the merits of its claims; (4) Whether the trial court erred and abused its discretion by issuing a temporary injunction when all of the claimed injuries would be compensable with money damages; and (5) Whether the trial court erred and abused its discretion by issuing a temporary injunction where Huntsman had not shown a probable right to relief.

## Standard of Review

██ "To obtain a temporary injunction, the applicant must plead and prove three specific elements: (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury

---

1. The record is somewhat confusing, as a document titled "Final Judgment" states that Huntsman's application for temporary injunction is denied and its suit is dismissed. This document is dated the same date as the temporary injunction. The bottom of the document is stamped "DENIED." Although at first glance it appears the trial court dismissed all of Huntsman's claims, the record of the hearing reveals that the trial court denied the Banks' motion to dismiss then granted Huntsman's application for temporary injunction. The stamp "DENIED" shows the relief described in the body of the document was not being granted.

in the interim." *Butnaru v. Ford Motor Co.,* 84 S.W.3d 198, 204 (Tex.2002). To establish a probable right to recovery, the applicant is not required to establish that it will prevail on final trial, but need only plead a cause of action and show a probable right to the relief sought. *Id.* at 211. "An injury is irreparable if the injured party cannot be adequately compensated in damages or if the damages cannot be measured by any certain pecuniary standard." *Id.* at 204. "A reviewing court should reverse an order granting injunctive relief only if the trial court abused that discretion." *Id.* "The reviewing court must not substitute its judgment for the trial court's judgment unless the trial court's action was so arbitrary that it exceeded the bounds of reasonable discretion." *Id.* "The trial court does not abuse its discretion if some evidence reasonably supports the trial court's decision." *Id.* at 211.

### Ripeness

The question of ripeness affects our resolution of issues one and two. In this case, the injunction issued by the trial court prohibits the Banks from filing suit to request a court to declare whether the merged entity, which does not yet exist, and which would presumably not be in existence on the date of the declaration, would be insolvent. The Banks argue that they are entitled to have a court in New York address that issue. Huntsman, on the other hand, argues that the issue is not yet ripe for adjudication.

 The Banks' obligation to fund the Hexion/Huntsman merger arises under a letter agreement between Hexion, the buyer, and the Banks. The Banks complain that the injunction interferes with their right to access the courts in New York. Although the commitment letter has a New York forum selection clause, it does not follow that any suit filed by the Banks in New York would be proper. New York's declaratory judgment statute requires a justiciable controversy. N.Y. C.P.L.R. Law § 3001 (2008). The Banks argue that the trial court misapprehended "both the facts and the law" in deciding to grant the injunction. The Banks argue that they can exercise a "legal right in a legal way" and no subsequent injury to a non-party is actionable. This is a correct statement; however, we do not agree that the Banks have a legal right to file a lawsuit to determine an issue that is not yet ripe for adjudication. We conclude that whether the merged entity will be solvent on a future date is at present not a justiciable controversy. Because injunctive relief includes the power to prevent the filing of vexatious or harassing lawsuits, the trial court, on this record, could enjoin the filing of a non-justiciable claim. Consequently, we hold that the trial court did not abuse its discretion and overrule issue one.

 In their second issue, the Banks contend there was no showing of the limited circumstances in which an anti-suit injunction is permitted. An anti-suit injunction is appropriate: (1) to address a threat to the court's jurisdiction; (2) to prevent the evasion of important public policy; (3) to prevent a multiplicity of suits; or (4) to protect a party from vexatious or harassing litigation. *Golden Rule Ins. Co. v. Harper,* 925 S.W.2d 649, 651 (Tex.1996). "There are no precise guidelines for determining the appropriateness of an anti-suit injunction or for deciding whether comity should be invoked. The circumstances of each situation must be carefully examined to determine whether the injunction is required to prevent an irreparable miscarriage of justice." *Gannon v. Payne,* 706 S.W.2d 304, 307 (Tex.1986). We review the trial court's ruling for abuse of discre-

tion. *Christensen v. Integrity Ins. Co.*, 719 S.W.2d 161, 163 (Tex.1986).

The Banks argue the trial court's jurisdiction would not be threatened by a declaratory judgment action filed in New York concerning the commitment letter because this Texas suit concerns only the merger agreement. They argue that no public policies are implicated by issues concerning the enforcement of statutory and contractual rights and forum selection clauses and that a single parallel proceeding would not qualify as a multiplicity of suits. Because Huntsman would not necessarily be a party to a New York declaratory judgment action, and Huntsman has already demonstrated its willingness to litigate by filing claims in Texas and Delaware, the Banks argue that their proposed New York declaratory judgment action cannot be considered to be vexatious or harassing. Furthermore, the Banks contend the trial court lacks the power to restrain federal court proceedings.

The Banks' argument that a New York declaratory judgment action would not be vexatious or harassing must be considered in light of the narrow scope of the injunctive relief granted by the trial court in this case. The trial court enjoined the Banks only from a declaratory judgment suit "that directly or indirectly alleges that the combination of Hexion and Huntsman would be insolvent or would be in any way incapable of performing its obligations to pay off the notes to the banks."

The commitment letter provision that required a solvency certificate states the following:

The [Banks] shall have received (i) customary and reasonably satisfactory legal opinions, corporate documents and certificates (including a certificate from the chief financial officer of [Hexion] or the chief financial officer of [Huntsman] or an opinion from a reputable valuation firm with respect to solvency (on a consolidated basis) of [Hexion] and its subsidiaries on the Closing Date after giving effect to the Transactions) (all such opinions, documents and certificates mutually agreed to be in form and substance customary for recent financings of this type with portfolio companies controlled by affiliates of or funds managed by [Apollo] ). . . .

First, we note that the commitment letter does not grant the Banks a right to obtain a prospective judicial determination of the future solvency of the merged corporation and there is no present controversy between Hexion and the Banks over whether a yet-to-be issued solvency certificate would satisfy that condition of the parties' agreement.

Second, the Banks have identified no presently existing dispute regarding the construction of this contractual language and no present controversy exists over whether documents that will be produced at closing will satisfy this particular condition precedent. The trial court heard testimony from Credit Suisse to the effect that the Banks can determine by an objective standard and in the normal course of business whether a solvency certificate is reasonably satisfactory; therefore, the Banks would not need a New York court to determine for them whether a company is solvent. Based on the merger agreement, it appears to us that the question of the solvency of the merged corporations appears relevant at (or as of) closing. The Delaware court which interpreted the same merger agreements in a Delaware suit between Huntsman and Hexion stated:

the court will not now resolve the question of whether the combined entity would be solvent or not. That issue may arise in the future in the course of this litigation or some related action, but it is

not now properly framed by the terms of the merger agreement and the status of the transaction. Thus, the issue is not ripe for a judicial determination.

■ Of course, the Banks were not parties in the Delaware action. Nevertheless, the facts before the Delaware court are substantially the same as those presented to the trial court in this case. Additionally, the Banks did not show the trial court that any event had occurred in the interim to cause the solvency issue to ripen into a justiciable controversy. When the trial court considered whether to grant a temporary injunction, the Banks had not determined that the merged company would be insolvent or that the solvency letter that would be provided at closing would not meet the condition precedent in the commitment letter. Because the existence of a justiciable controversy between Hexion and the Banks would necessarily be dependent upon an event—the delivery of a solvency certificate by third parties beyond the control of the Banks—the trial court could have determined that a declaratory judgment suit that alleges that the merged company would be insolvent or would be incapable of performing its obligations to pay off the notes to the banks would not be ripe for judicial determination under New York's declaratory judgment statute at any time before the closing date. *See N.Y. Pub. Interest Research Group, Inc. v. Carey*, 42 N.Y.2d 527, 399 N.Y.S.2d 621, 369 N.E.2d 1155, 1158 (1977)(where the issue was not whether to submit the proposition to the voters but whether the statute would be constitutional if passed, a declaratory judgment action was not ripe and dismissal was required). The courts of New York, like the courts of Texas, do not give advisory opinions. *Id.* at 1158; *see also* TEX. CONST. art. II, § 1. Where the potential New York action would not be ripe because it would not present a justiciable controversy, and con-

sidering the evidence before the trial court, it was within the discretion of the trial court to conclude that filing such an action would be vexatious and harassing.

■ The Banks also argue for the first time on appeal that the trial court improperly enjoined a federal court. The Banks are the only party enjoined by the trial court's order, no federal court action has been filed, and Huntsman contends that a federal court would not have jurisdiction over the claims because the potential parties lack complete diversity. Under the exceptional circumstances presented here, we believe the trial court could prevent the Banks from filing a suit aimed at vexatiously frustrating Huntsman's ability to procure the necessary solvency certificate and at delaying the closing beyond the commitment letter's expiration date. We overrule issue two.

Status Quo

■ The Banks' third issue contends the temporary injunction fails to preserve the status quo, but grants all the injunctive relief the plaintiff would be entitled to if it were successful in a trial on the merits. The status quo is "the last, actual, peaceable, noncontested status which preceded the pending controversy." *Transport Co. of Tex. v. Robertson Transports, Inc.*, 152 Tex. 551, 261 S.W.2d 549, 553–54 (1953). The Banks contend the trial court altered the status quo by restraining the filing of a declaratory judgment action in New York. As Huntsman notes, however, no suit had been filed in New York when the trial court entered the injunction. The injunction is designed to preserve the status quo by preventing the Banks from seeking a solvency determination in a judicial proceeding in which Huntsman would not be a party. The last, peaceable, noncontested status of the parties placed them

with a commitment letter and merger agreement in place and with no active suit to determine solvency. Furthermore, the Banks admitted to the trial court that the Banks had not yet determined that they had received sufficient information to determine that the merged company would not be solvent. We hold the trial court did not abuse its discretion by entering an injunction intended to preserve the status quo between the parties. We overrule issue three.

### Irreparable Harm

■ In their fourth issue, the Banks challenge the trial court's finding of irreparable harm. The Banks argue that any injuries to Huntsman would be compensable with money damages. This suit is an action for tortious interference and fraud by the Banks, not a breach of contract action against Hexion. The trial court heard testimony that the allegedly interfered-with merger agreement is irreplaceable if the merger fails to close before the commitment letter expires. Furthermore, the trial court heard testimony that the mere filing of the Hexion lawsuit had a negative effect on Huntsman's business, causing customers and investors to doubt Huntsman's solvency and putting the long-term viability of the company in jeopardy. This testimony is some evidence from which the trial court could find that the injury to Huntsman could not be adequately compensated in damages or that Huntsman's damages cannot be measured by any certain pecuniary standard. *See Butnaru*, 84 S.W.3d at 204. We overrule issue four.

### Parent/Subsidiary Claim

The final issue challenges the evidentiary support for Huntsman's application for a temporary injunction. The Banks argue that a parent cannot tortiously interfere with its subsidiary so the Banks cannot be sued for conspiring with Apollo to interfere with the Hexion–Huntsman merger. *See Grizzle v. Texas Commerce Bank, N.A.*, 38 S.W.3d 265, 286 (Tex.App.–Dallas 2001)(holding the interests of a parent corporation and its wholly owned subsidiary were so closely aligned as to eliminate their separate identity for purposes of tortious interference), *rev'd on other grounds*, 96 S.W.3d 240 (Tex.2002). The Banks also argue there is no evidence that the Banks conspired with Apollo. *See Schlumberger Well Surveying Corp. v. Nortex Oil & Gas Corp.*, 435 S.W.2d 854, 858 (Tex.1968)(holding that conspiracy may be proven through circumstantial evidence but burden of proof cannot be sustained through inference stacking).

The Banks understate the quality of the evidence developed at the temporary injunction hearing. First, the inferences drawn by the trial court do not amount to "inference stacking." For instance, the Banks had meetings without notice to Huntsman about changing the terms of the financing. From that direct evidence a direct inference may be drawn that the Banks knew that Huntsman was unaware of the meeting.

■ Our review of the record reveals some evidence supports the trial court's finding on probable right of recovery. For instance, the trial court heard evidence that would allow it to reach the conclusion that terms of the Banks' commitment were material in inducing Huntsman to abandon its merger under a prior agreement with another entity and enter into the merger agreement with Hexion. The commitment letter states that the obligations of the financing sources to fund the commitments are not subject to any conditions other than as set forth in the commitment letter. The merger agreement required Hexion to keep Huntsman informed with respect to

all material activity concerning the status of the financing. Yet Huntsman produced evidence that the Banks and Apollo had an undisclosed agreement from the outset to vary from the terms of the commitment letter. The Banks claim Huntsman failed to demonstrate that Apollo and the Banks reached a meeting of the minds on a course of action at their April 2008 meeting in which the Banks proposed a restructuring of the supposedly "tight" financing commitment. Huntsman showed the trial court that Hexion altered its course of conduct after that meeting and took affirmative steps that were intended to avoid fulfilling the terms required by the merger.

We also find unpersuasive the Banks' arguments regarding Apollo's status as Hexion's parent. Huntsman's claims against the Banks are not wholly dependent on the alleged conspiracy with Apollo, but include claims that the Banks directly interfered with Huntsman's merger contracts. Furthermore, the issue of whether Hexion and Apollo operate as a single business enterprise was not established in the trial court. We overrule issue five.

We hold that the trial court did not abuse its discretion in granting the temporary injunction. The trial court's order granting a temporary injunction is affirmed. The mandate will issue with the judgment of the Court. *See* Tex.R.App. P. 18.6.

AFFIRMED.