Bayou v 351 Owners Corp. (2025 NY Slip Op 25181)

[*1]

Bayou v 351 Owners Corp.

2025 NY Slip Op 25181

Decided on August 1, 2025

Supreme Court, New York County

Lebovits, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on August 1, 2025
Supreme Court, New York County

Bradley Bayou and Mark Itkin, Plaintiffs,

against
351 Owners Corporation, Defendant.

Index No. 150137/2025

Quinn McCabe LLP, New York, NY (Eric A. Thorsen, Christopher P. McCabe, and Laura McKenzie of counsel), for plaintiffs
Belkin Burden Goldman, LLP, New York, NY (Matthew S. Brett of counsel), for defendant

Gerald Lebovits, J.

This action arises from a dispute between the owners of adjoining residential buildings in Chelsea. Plaintiffs, Bradley Bayou and Mark Itkin, own 353 West 20th Street (the 353 Building). Defendant, 351 Owners Corporation (a residential cooperative corporation), owns 351 West 20th Street (the 351 Building). The two buildings share a common, or "party," wall. The two properties are also separated by a wall on the 351 Building's side of the property line that, [*2]although contiguous with the party wall, is structurally independent from that wall and stands on its own footing. (See NYSCEF No. 20 at ¶¶ 7-8 [aff. of plaintiffs' engineer]; NYSCEF No. 27 [photographs].)
Plaintiffs wish to undertake substantial renovation of the 353 Building, including an expansion of the building's cellar. It is undisputed that this planned construction and excavation work will, absent protective measures, cause structural harm to the 351 Building. Plaintiffs' proposed protective measure is to underpin the party wall and the independent wall between the two properties to strengthen the foundation of the 351 Building. This underpinning would, in part, fall on defendant's side of the property line.
The New York City Department of Buildings (DOB) has issued a stop-work order on the site, and refused to lift the stop-work order absent agreement between the parties permitting underpinning. Although the parties have negotiated over the terms of a license agreement that would allow plaintiffs to underpin, the negotiations have proven unsuccessful, in part because defendant is seeking provisions to protect it against the possibility that it will lose property-insurance coverage (or have to pay substantially higher premiums) should underpinning occur.[FN1]

In this action, plaintiffs are asserting claims for (i) a declaration that plaintiffs are entitled to underpin the party and independent walls or, alternatively, that defendant is required under the New York City Building Code to undertake that underpinning; (ii) injunctive relief requiring defendant to execute a consent to plaintiffs' proposed underpinning work; (iii) damages in negligence for the construction-delay costs flowing from defendant's refusal to permit plaintiff to do the underpinning. Plaintiffs now move for partial summary judgment, seeking entry of their requested declaration. The motion is denied, and declaratory judgment is granted in defendant's favor as the non-moving party.
DISCUSSION
I. Whether a Justiciable Controversy Exists
In opposing plaintiffs' motion, defendant argues first that no justiciable controversy [*3]currently exists that may be resolved through declaratory relief. (See NYSCEF No. 52 at 8-9.) That is, defendant asserts, because plaintiffs "have evidently not challenged the DOB requirement that Plaintiffs are required to enter into an agreement for underpinning" before the stop-work order will be lifted, plaintiffs' "claim for declaratory relief is premature." (Id. at 9.) This court disagrees.
Plaintiffs do not contend that they believe that the DOB exceeded its authority, or otherwise acted arbitrarily and capriciously, in leaving the stop-work order in place unless and until the parties here reach an agreement permitting underpinning. Plaintiffs are instead attempting to comply with the DOB's requirements by bringing this action. Nor, in any event, does defendant identify available administrative remedies that plaintiffs could pursue if they did believe that the DOB acted improperly.
The requested declaratory relief will directly and concretely affect the parties' legal relationships by clarifying whether defendant is required to execute the license sought by plaintiffs, or otherwise to undertake itself the underpinning work that plaintiffs believe to be necessary. No more is required to permit this court to issue a declaratory judgment. (See New York Pub. Interest Research Group v Carey, 42 NY2d 527, 530-531 [1977].)
II. Whether Plaintiffs are Entitled to the Requested Declaration
A. Whether Plaintiffs May Underpin the Party Wall Without Defendant's Consent
It is undisputed that part of the underpinning that plaintiffs wish to install would be on defendant's side of the property line. And when, "as here, the underpinning is a permanent encroachment," placing pins on defendant's property without defendant's consent would ordinarily constitute an impermissible trespass. (Madison 96th Assocs., LLC v 17 E. 96th Owners Corp., 121 AD3d 605, 608 [1st Dept 2014].) Plaintiffs argue, though, that this principle does not apply here because the proposed underpinning would protect defendant's property by supporting the foundation of a party wall. This argument is unpersuasive.
Plaintiffs rely heavily on a statement in an 1873 decision of the Court of Appeals that a property-owner may alter a party wall "in the improvement of his own property," whether "by deepening the foundation or increasing the height, so far as it can be done without injury" to the adjoining property-owner sharing the wall. (See NYSCEF No. 31 at 8-9, quoting Brooks v Curtis, 50 NY 639, 644 [1873].) As an initial matter, this language in Brooks is, strictly speaking, dicta here: The issue in Brooks was whether the owner on one side of a party wall could increase the height of the wall through an addition to the wall falling on both sides of the property line, not the circumstances under which the owner could underpin the foundation of the party wall. (See 50 NY at 643-644; cf. Batt v Kelly, 75 AD 321, 322 [2d Dept 1902] [describing Brooks as "relat[ing] only to the right of one of the common owners to increase the height of a party wall"].) Nor do plaintiffs identify any other appellate decision supporting this "well-settled" proposition—only a few trial-court cases citing Brooks. (See NYSCEF No. 31 at 9.) But even setting that difficulty aside, plaintiffs have not shown that the quoted language from Brooks [*4]is apposite here.
The default rule with respect to party walls is that "each of the two adjoining owners . . . owns in severalty so much of the wall as stands upon his own lot, each having an easement in the other strip for purposes of the support of his own building."[FN2]
(Sakele Bros., LLC v Safdie, 302 AD2d 20, 25 [1st Dept 2002] [alterations and quotation marks omitted].) Thus, the part of the wall on the 351 Building's side of the line is defendant's "sole property, subject only to [plaintiffs'] easement for the support of [their] building." (Id.) The parties are not "tenants in common, each holding an undivided one-half interest in the entire wall." (Id.)
Here, plaintiffs are not seeking to underpin the party wall to support the 353 Building's foundations, or otherwise to support directly a proposed use of plaintiffs' property. Instead, they wish to underpin the party wall to prevent defendant's 351 Building from suffering structural damage from construction work on the 353 Building. Plaintiffs cite no appellate cases standing for the proposition that plaintiffs' party-wall easement extends to a use of the adjoining property-owner's section of the wall that will not directly benefit plaintiffs' property (or their use of the property).[FN3]

Nor is this merely a formal distinction. The only reason that Property-Owner A has an easement in Adjoining Owner B's half of a party wall in the first place is that A's property is structurally dependent on the entire wall. But A may not leverage that need for structural support into an easement permitting intrusion on B's side of the line for some other reason. Indeed, Brooks itself characterizes a party-wall easement as one enabling "each party . . . to derive from the wall all the benefit which it is capable of affording" to that party. (50 NY at 644.) And Brooks repeatedly describes the permissible party-wall alterations encompassed by that easement as those undertaken for the benefit of the altering party, not the adjoining party.[FN4]
(See id. at 643-644.)
It is no answer to say that plaintiffs should be able to underpin on defendant's side of the [*5]party wall because that underpinning will ultimately be to defendant's benefit by preventing structural damage to the 351 Building. In Madison 96th Associates, the First Department held that the altering party's desire to avoid liability for causing property damage to the adjoining property does not bring with it the right to underpin the adjoining property without consent. (See 121 AD3d at 608.) The need to safeguard the adjoining property "does not abrogate the well established principle of law that a property owner's placement of a permanent structure upon an adjacent owner's property, without the adjacent owner's consent or permission, is a trespass." (Id.)
Finally, even if this court were to conclude instead that plaintiffs could permissibly underpin the party wall, that conclusion would not extend to the independent section of wall separating the two properties. And plaintiffs have not shown—or attempted to show—that underpinning only of the party section of wall would be sufficient to prevent damage to the 351 Building, or even safe at all.
B. Whether Defendant is Required to Underpin its Own Wall
Plaintiffs also contend that under the Building Code, defendant's refusal (thus far) to provide plaintiff the requested license to underpin means that defendant is statutorily required itself to do the underpinning. (See NYSCEF No. 31 at 10-11, citing New York City Administrative Code § 28-3309.5.) This contention is unpersuasive.
Building Code § 3309.4 (Admin. Code § 28-3309.4) provides that a party undertaking "soil or foundation work" shall "at his or her own expense[] preserve and protect from damage any adjoining structures" and their foundations, "provide such person is afforded a license . . . to enter and inspect the adjoining buildings and property, and to perform such work thereon as may be necessary for such purpose." If, however, the party undertaking the soil or foundation work "is not afforded a license, such duty to preserve and protect the adjacent property shall devolve to the owner of such adjoining property"; and the adjoining owner "shall be afforded a similar license with respect to the property where the soil or foundation work is to be made." Building Code § 3309.5 imposes parallel requirements for the specific context of "underpinning or an alternate method of support of buildings and adjacent property" to protect it during "construction, demolition, or excavation work."
Plaintiffs are relying on the statutory language providing that absent a license, the "duty to preserve and protect the adjacent property shall devolve" to that property's owner—here, defendant. (See NYSCEF No. 31 at 10-11; NYSCEF No. 56 at 6.) This language was added when the construction-safety provisions of the Administrative Code were reorganized in 2007, effective July 2008. (See Local Law No. 33/2007 of the City of New York.) Plaintiffs provide no cases construing this "devolving of duty" language as imposing an affirmative requirement on adjoining property-owners either to grant a license to the excavating property-owner to underpin or to do the underpinning themselves. Instead, caselaw interpreting §§ 3309.4 and 3309.5 has instead treated the presence of a license, or the adjoining property-owner's efforts to protect its property from excavation-related harm absent a license, as a necessary element of a damages action, should the excavation damage the adjoining property. (See O'Hara v New School, 118 [*6]AD3d 480, 481 [1st Dept 2014]; Famous Formaggio Pizzeria, LLC v Procida Constr. Corp., 59 Misc 3d 661, 667 [Sup Ct, Bronx County 2018]; accord 211-12 N. Blvd. Corp. v LIC Contr., Inc., 186 AD3d 69, 76-81 [2d Dept 2020].[FN5]
)
As defendant points out, on plaintiffs' contrary interpretation of § 3309.5, the Building Code mandates defendant "to install underpinning on its own building" to facilitate plaintiffs' excavation work. (NYSCEF No. 52 at 12.[FN6]
) Put differently, plaintiffs are essentially arguing that § 3309.5 instituted the same kind of compulsory license regime envisioned by RPAPL 881—only for permanent encroachments, rather than temporary ones. One would expect the City Council, if it intended to impinge to that degree on the property rights of adjoining owners, to have said so expressly. That is particularly true given that this type of regime would raise serious Takings Clause concerns. (Cf. Loretto v Teleprompter Manhattan CATV Corp., 458 US 419, 435-441 [1982] [holding that a New York statute requiring property-owners to permit a small-scale but permanent physical occupation of their property constitutes a taking].)
In short, this court concludes that, as a matter of law, (i) plaintiffs do not have an easement on defendant's property to install underpinning; (ii) defendant is not statutorily required by the Building Code to install underpinning on its own property.
Accordingly, it is
ORDERED that plaintiffs' motion for partial summary judgment in its favor on its second cause of action is denied; and it is further
ORDERED that defendant is granted partial summary judgment on plaintiffs' second cause of action as the non-moving party; and it is further
ORDERED, ADJUDGED, AND DECLARED that plaintiffs do not have an easement at law to install underpinning underneath the party wall located between plaintiffs' premises and defendant's premises (or underneath the contiguous independent wall between the parties' [*7]premises) without defendant's consent; and it is further
ORDERED, ADJUDGED, AND DECLARED that defendant is not required by Building Code § 3309.5 to install underpinning underneath the party wall or underneath the independent wall between the parties' premises; and it is further
ORDERED that the balance of plaintiffs' claims are severed and shall continue; and it is further
ORDERED that the parties shall appear before this court for a telephonic status conference on August 25, 2025.
DATE 8/1/2025

Footnotes

Footnote 1:Plaintiffs are also seeking a license to access defendant's property to install temporary safety protections during construction. Although much less disagreement exists between the parties over the terms of that requested license, negotiations appear to have reached impasse, in large part because of the issue of the underpinning discussed here. Plaintiffs have separately commenced a special proceeding under Real Property Actions and Proceedings Law § 881 to obtain the necessary license; that proceeding is pending before the undersigned as well. (See Bayou v 351 Owners Corp., Index No. 152394-2025 [Sup Ct, NY County].) Plaintiffs presumably bifurcated the two license-related lawsuits because permanent underpinning of the kind that plaintiffs wish to undertake is "outside the scope of a temporary RPAPL 881 license." (154 E 62 LLC v. Normanus Realty LLC, 235 AD3d 421, 423 [1st Dept 2025].) 

Footnote 2:Although this rule can, of course, be modified by statute or agreement (see Sakele Bros., LLC v Safdie, 302 AD2d 20, 25 [1st Dept 2002]), it is undisputed that no such modification has altered the default rule here.

Footnote 3:At most, plaintiffs rely on an unpublished trial-court order denying a request for a preliminary injunction to prevent underpinning. (See NYSCEF No. 31, citing Northern Trust Co. v Witteveen, Index No. 158953/2023, NYSCEF No. 65 [Sup Ct, NY County Oct. 30, 2023], reproduced here at NYSCEF No. 55.) But that order merely memorializes a decision delivered on the record at argument on the motion (see NYSCEF No. 55 at 1)—and plaintiffs do not provide an argument transcript.

Footnote 4:This is not to say that Brooks limits the permissible scope of party-wall alterations to those that benefit the altering party's property; only that Brooks does not itself validate party-wall alterations, like the underpinning at issue here, that benefit only the altered party's property. 

Footnote 5:A difference may exist between the First and Second Departments on whether the adjoining property-owner must provide evidence of its protective efforts to obtain damages, absent a license, if the constructing/excavating party never made a genuine request for a license in the first place. (See 221-12 N. Blvd., 186 AD3d at 77-78 [discussing this issue].) That difference, if it exists, is immaterial here.

Footnote 6:On reply, plaintiffs emphasize that they are not "in the within motion" seeking injunctive relief compelling defendants to underpin its own building, only a declaration that defendant is statutorily required to install underpinning. (NYSCEF No. 56 at 2.) But the distinction between seeking a declaration that defendants must install underpinning and seeking an injunction requiring that installation is rather fine—especially because plaintiffs' complaint requests an injunction requiring defendant to permit underpinning work to proceed, and damages stemming from defendant's delay in permitting underpinning. (See NYSCEF No. 1 at 9.)