OPINION OF THE COURT
John C. Egan, Jr., J.
This amended decision and order supercedes the decision and order dated October 21, 2008. (See 22 Misc 3d 741.)[1] By stipulation dated December 5, 2008, all parties consented to the issuance of an amended decision and order in this action, based on the parties’ recollection that, as a result of a prior court conference, plaintiffs’ time to move for class certification and for leave to amend the complaint was extended until after such time that the defendants’ motion to dismiss was decided. This amended decision and order reflects this stipulation between the parties.[2]
The defendants bring the instant motion seeking dismissal of the complaint filed by the State of New York, the New York State Department of Correctional Services, and the New York State Division of Parole (collectively plaintiffs). The plaintiffs oppose the defendants’ motion.
*811 In their complaint, plaintiffs seek a declaratory judgment permitting plaintiffs to maintain custody of “tens of thousands of violent felons” who may have been illegally sentenced to postrelease supervision (also referred to as PRS) so that they may be systematically referred back to the sentencing courts, where all the necessary parties can be heard on the issues arising out of the illegal sentences. Plaintiffs allege that this referral is appropriate where it appears that mandatory postrelease supervision may not have been imposed, so that the sentencing court can correct any sentencing errors and thereby “address the potential public safety crisis inherent in releasing tens of thousands of violent felons into the community without supervision.”[3] Plaintiffs further allege that the present “proliferation of piecemeal, detached and inconsistent civil proceedings will push the criminal justice system to the brink of chaos.”[4] Plaintiffs also seek an order certifying certain classes of defendants (consisting of all of the individuals in plaintiffs’ custody, for whom it appears that the documents in possession of plaintiffs do not record terms of postrelease supervision) and permitting plaintiffs to maintain custody of the defendant classes[5] for *812 certain specified periods[6] in order to afford plaintiffs the time to identify defendants subject to mandatory postrelease supervision, to locate records that would indicate whether, for any such defendant, the original sentencing court did, in fact, pronounce postrelease supervision, and to refer any defendant whose sentence did not include postrelease supervision (or whose records are inconclusive) to a sentencing court to determine whether that defendant may require resentencing or release. Simply, plaintiffs seek an order permitting them to maintain custody and supervision of the defendant class members.[7]
“Post-release supervision was established by the legislature in 1998 as a mandatory follow-up period to a determinate sentence for violent felony offenders. This legislation is commonly known as ‘Jenna’s Law.’ Violent felony offenders are now required to serve at least six-sevenths of a determinate prison sentence, followed by mandatory five year periods of post-release supervision for second violent felony offenders, and mandatory periods of between one and a half to five years post-release supervision for first time felony offenders. There are many thousands of defendants serving determinate sentences after being convicted of committing violent felony offenses following the enactment of Jenna’s Law. And, by law, they are all subject to mandatory periods of post-release supervision.” (People ex rel. Joyner v New York State Div. of Parole, 15 Misc 3d 1133[A], 2007 NY Slip Op 50961[U], *1 [Sup Ct, Bronx County 2007].)[8]
Based on the enactment of Jenna’s Law, it was the Department of Correctional Services’ understanding that the imposi *813 tian of postrelease supervision was not a judicial function, and therefore could be imposed administratively by the Department of Correctional Services, even if the sentencing court was silent with respect to that issue.
While in 2006 the Second Circuit Court of Appeals ruled that federal constitutional law prohibited the Department of Correctional Services from adding postrelease supervision to any determinate sentence if the court did not impose such a term at sentencing, the New York State Appellate Divisions were split on the issue. (See Earley v Murray, 451 F3d 71, 75-76 [2d Cir 2006].)[9] By February 2008, all four Departments of the Appellate Division followed the ruling of the Second Circuit.[10]
Then, by decision and order dated April 29, 2008, the New York State Court of Appeals decided Matter of Garner v New York State Dept, of Correctional Seros. (10 NY3d 358 [2008]). In Garner, the Court of Appeals held that the Department of Correctional Services may not administratively add a mandatory period of postrelease supervision onto a sentence where such period was not pronounced by the sentencing judge. The Court also recognized, in a footnote, that its holding was “without prejudice to any ability that either the People or DOCS may have to seek the appropriate resentencing of a defendant in the proper forum.” (Id. at 363 n 4.) In Garner, defendant reached the maximum expiration date of his sentence and was released to parole supervision. On the same date, the Court of Appeals decided People v Sparber (10 NY3d 457 [2008]). In Sparber (which involved five appeals), rather than striking postrelease supervision from the sentences, the Court found that “there exists no procedural bar to allowing the sentencing court to correct its [postrelease supervision] PRS error,” and remitted the five matters to the trial court for resentencing to include the *814 proper pronouncement of the relevant postrelease supervision term.[11] (Id. at 472.) Notably, the Court of Appeals decision to remit the Sparber defendants back to the trial court for resentencing involved defendants who were challenging their sentences while still incarcerated on their original sentences. (People ex rel. Hernandez v Superintendent, Oneida Correctional Facility, 20 Misc 3d 627, 629 [Sup Ct, Oneida County 2008].) It was after the Court of Appeals decisions in Garner and Sparber that plaintiffs commenced the instant action.
Thereafter, on June 30, 2008, legislation was passed which requires certain violent felons to appear for resentencing so that their statutorily required sentences of postrelease supervision may be imposed. (See Governor’s Program Bill No.73, Bill Jacket, L 2008, ch 141; see L 2008, ch 141.)[12] Specifically, the legislation provides, in part, that upon notification by Department of Correctional Services that postrelease supervision was not imposed on the commitment order of a “designated person,”[13] within 30 days thereafter, the sentencing court shall commence a proceeding to consider resentencing. No later than 40 days after receipt of such notice, the sentencing court shall *815 issue and enter a written determination and order. (See Correction Law § 601-d.)[14]
In support of their motion seeking dismissal of the plaintiffs’ complaint, the defendants argue the following:
(1) Plaintiffs’ claim has been rendered moot based on the passage of Laws of 2008 (ch 141 [eff June 30, 2008]), which provides a statutory resolution to the postrelease supervision sentencing issue. Laws of 2008 (ch 141) amended the Correction Law to establish a procedure governing the resentencing of persons upon whom a determinate sentence was imposed that was required by law to include a term of postrelease supervision. Thus, defendants argue, plaintiffs have failed to raise a justiciable controversy.
(2) An order requiring further incarceration is inequitable to those who would only be subject to postrelease supervision and not incarceration. An order requiring incarceration is unnecessary as courts are currently dealing with a large volume of cases referred by the Department of Correctional Services without the need for equitable intervention by the court.
(3) Plaintiffs are not entitled to a declaratory judgment as there is no prejudice. Further, the mandate of the Court of Appeals is clear.[15] Plaintiffs’ claim is nothing more than a request for an advisory opinion, which is improper under this proceeding.
(4) Plaintiffs’ incarceration plan is overbroad, since it permits incarceration for those whose legal status is clear because all necessary documents have been obtained.[16]
(5) This court should not interfere with the legal process now occurring in other courts, including habeas corpus and CPLR *816 article 78 proceedings challenging either incarceration or the obligation to report to parole.
(6) In many cases, resentencing is illegal, based on double jeopardy, due process and jurisdictional considerations. Furthermore, defendants claim that plaintiffs have failed to cite any New York case in which a defendant class action was certified over the objection of the defendant class. Defendants claim that plaintiffs cannot meet the requirements for class certification.
In opposition to the defendants’ motion, plaintiffs argue that they have stated a cause of action seeking declaratory relief “that defines the rights of the parties engaged in the re-sentencing process now required under the June 30, 2008 legislation and the mandates of Garner, Sparber and Jenna’s Law.”[17] While plaintiffs argue that this legislation has created a method for the Department of Correctional Services to “obtain definitive judicial guidance as to which defendants are to remain subject to PRS and which are not,” plaintiffs claim that the legislation has not resolved all issues set forth in the complaint.[18] Plaintiffs argue that some resentencing questions remain unresolved as a result of the June 30, 2008 postrelease supervision legislation, including, under what circumstances, if any, does the 2008 legislation give plaintiffs the authority to terminate the custody or supervision of the members of a defendant class?[19] Plaintiffs argue that they are not seeking an advisory opinion, but rather seeking to bring clarity to uncertain or disputed obligations.
Plaintiffs claim that, because the 2008 postrelease supervision legislation leaves open questions as to the rights and obligations of the plaintiffs, their claim is not moot, and plaintiffs *817 have presented a justiciable controversy. Plaintiffs assert that the issues that remain unresolved as a result of the 2008 postrelease supervision legislation may be better focused in the proposed amended complaint. Plaintiffs claim that one issue is whether they have the obligation to release defendants who have not yet prevailed in CPLR article 78 or habeas corpus litigation.[20] Plaintiffs claim that the court should clarify the effect that resentencing of a defendant class member has on that member’s custodial and/or supervisory status.
Plaintiffs further argue that this court has jurisdiction to decide the issues presented on the grounds that the defendants have sought class action declaratory relief in federal courts based on the illegal imposition of postrelease supervision. Plaintiffs argue that, by pursuing declaratory and injunctive relief and money damages in other courts, defendants concede the jurisdiction of this court to determine the issues raised by plaintiffs.
The scope of review relevant to a motion to dismiss pursuant to CPLR 3211 is limited. (Cron v Hargro Fabrics, 91 NY2d 362, 366 [1998].) When examining such a motion, a court must liberally construe the pleadings in plaintiffs favor, accept the facts alleged as true, and determine whether the facts alleged fit within any cognizable legal theory (id. at 366; Kovach v Hinchey, 276 AD2d 942, 944 [3d Dept 2000]). However, “a court need not accept as true legal conclusions or factual allegations that are either inherently incredible or flatly contradicted by documentary evidence” (Ozdemir v Caithness Corp., 285 AD2d 961, 963 [3d Dept 2001]; 1455 Washington Ave. Assoc, v Rose & Kiernan, 260 AD2d 770, 771 [3d Dept 1999]). “A court may consider factual materials to remedy defects in the allegations made in the complaint or petition, but should not make determinations regarding whether a claim is supported by evidence.” (Matter of Niagara Mohawk Power Corp. v State of New York, 300 AD2d 949, 952 [3d Dept 2002]; Rovello v Orofino Realty Co., 40 NY2d 633, 635 [1976].) “[T]he court . . . ‘must accept the allegations of the complaint as true and ignore the affidavits submitted by defendants.’ ” (Valentino v County of Tompkins, 284 AD2d 898, 899 [3d Dept 2001].) While affidavits received on such motion may not typically be utilized to determine whether there is evidentiary support for the pleadings, a dismissal can, in fact, be *818 granted if “the affidavits establish conclusively that plaintiff has no cause of action.” (Rovello, 40 NY2d at 636; Marraccini v Bertelsmann Music Group, 221 AD2d 95, 97 [3d Dept 1996].)
It is fundamental that in order to establish a cause of action for a declaratory judgment, a plaintiff must present a justiciable controversy.[21] (CPLR 3001;[22] Cherry v Koch, 126 AD2d 346, 350 [2d Dept 1987]; Church of St. Paul & St. Andrew v Barwick, 67 NY2d 510, 518 [1986].) The power of a court to declare the law only arises out of, and is limited to, determining the rights of persons which are actually controverted in a particular case pending before the tribunal. (Matter of Hearst Corp. v Clyne, 50 NY2d 707, 713-714 [1980].) “This principle, which forbids courts to pass on academic, hypothetical, moot, or otherwise abstract questions, is founded both in constitutional separation-of-powers doctrine, and in methodological strictures which inhere in the decisional process of a common-law judiciary.” (Id. at 713.) A justiciable controversy should not be equated with hypothetical or abstract questions. The controversy must be definite and concrete, touching legal relations of the parties. (Matter of Liverpool Cent. School Dist. v Nyquist, 84 Misc 2d 20 [Sup Ct, Albany County 1975].) Along these lines, the declaratory judgment action may not be used to secure an advisory opinion. (Self-Insurer’s Assn, v State Indus. Commn., 224 NY 13, 16 [1918]; Cuomo v Long Is. Light. Co., 71 NY2d 349 [1988]; Matter of Town of Coeymans v City of Albany, 237 AD2d 856 [3d Dept 1997].) “The courts of New York do not issue advisory opinions for the fundamental reason that in this State ‘[the] giving of such opinions is not the exercise of the judicial function’ ” (Cuomo, 71 NY2d at 354, quoting Self-Insurer’s Assn, v State Indus. Commn., 224 NY at 16). If a decision rendered by the court “ ‘might ultimately prove to have no effect on the substantial rights of either party’ the complaint should be dismissed.” (Employers’ Fire Ins. Co. v Klemons, 229 AD2d 513, 514 [2d Dept 1996].)
“The supreme court may render a declaratory judgment having the effect of a final judgment as to the rights and other legal relations of the parties to a justiciable controversy whether or .not further relief is or could be claimed. If the court declines to render such a judgment it shall state its grounds.”
*819 Here, the plaintiffs’ complaint does not set forth any real and substantial controversy between themselves and the defendants. In opposition to the defendants’ motion to dismiss, plaintiffs have alleged hypothetical questions resulting from the 2008 postrelease supervision legislation.[23] Yet, with no circumstance identified to which each of these hypothetical questions might apply, the declaration sought would be the equivalent of a request for an advisory opinion. (Cuomo, 71 NY2d at 354.) For this reason alone, the plaintiffs’ complaint should be dismissed.[24] Yet, due process concerns also prohibit the relief requested by plaintiffs.
The Due Process Clause “protects individual liberty against ‘certain government actions regardless of the fairness of the procedures used to implement them.’ ” (See Collins v Harker Heights, 503 US 115, 125 [1992], quoting Daniels v Williams, 474 US 327, 331 [1986].) In the class action context, due process insures procedural fairness and protects the interests of absent class members. (Bakalar v Vavra, 237 FED 59, 63-64 [SD NY 2006].) “These concerns are particularly acute in defendant *820 class actions where the unnamed class members risk exposure to liability.” (Id. at 63; In re Integra Realty Resources, Inc., 262 F3d 1089, 1105 [10th Cir 2001]; Marchwinski v Oliver Tyrone Corp., 81 FRD 487, 489 [WD Pa 1979] [“(A) defendant class differs in vital respects from a plaintiff class, and . . . raises immediate due process concerns. . . . (W)hen one is an unnamed member of a defendant class, one may be required to pay a judgment without having had the opportunity to personally defend the suit”];[25] Bakalar, 237 FRD at 63-64.) “The essence of due process is the requirement that a person in jeopardy of serious loss [be given] notice of the case against him and opportunity to meet it.” (Mathews v Eldridge, 424 US 319, 348 [1976] [internal quotation marks omitted]; People v Bell, 3 Misc 3d 773, 777 [Sup Ct, Bronx County 2003].) “[A]n over-broad framing of the class may be so unfair to the absent members as to approach, if not amount to, deprivation of due process.” (Haitian Ctrs. Council, Inc. v McNary, 969 F2d 1326, 1337 [2d Cir 1992].)
While this court understands and does not necessarily condemn the plaintiffs’ motives in bringing the instant action, plaintiffs have failed to set forth any precedent for initiating an action against a class of unnamed defendants where the end result could be the continued incarceration of individuals, some of whom have already served and completed their sentences. It is undisputed that defendants as a class belong to subclasses of incarcerated inmates and releasees, some of whom have completed their underlying determinate terms. It is also undisputed that plaintiffs have not been able to identify all of the defendant class members.[26] We do not, in this country, adjudicate the rights of criminal defendants en masse for the simple reason that it is unfair and a denial of basic due process. Moreover, plaintiffs are admittedly in possession of the sentencing information of some individuals. This provides the plaintiffs with immediate information as to whether postrelease supervi *821 sion was illegally imposed. Yet, plaintiffs’ broad request for relief would keep individuals, even those known to be not subject to postrelease supervision under Garner and Sparber, in custody.
Based on the foregoing, the defendants’ motion seeking dismissal of the plaintiffs’ complaint is granted.

. The issuing court generally retains the power to clarify an order or to correct ministerial errors or irregularities contained therein that do not affect substantial rights of the parties. (Matter of Owens v Stuart, 292 AD2d 677 [3d Dept 2002].) Issuance of the revised order will be appropriate when the record offers irrefutable support for the correction made by the court therein. (Ungar v Ensign Bank, 196 AD2d 204, 208 [1st Dept 1994].)

. The stipulation provides, in part, that
“[t]he parties agree that as of September 11, 2008, the Plaintiffs’ time to move for class certification and for leave to amend the complaint was extended until after the motion to dismiss was disposed of by the Court, and the parties agree that such time to move for class certification and for leave to amend the complaint shall be deemed extended to thirty days from the date of service of the notice of entry of any decision disposing of the motion to dismiss by the Court.”

. Plaintiffs point to a recent case where a releasee prevailed on a habeas corpus petition and successfully had his postrelease supervision vacated. This releasee was arrested and charged on May 9, 2008 with the murder of a woman running a dry cleaning store in Brooklyn, New York. (Complaint H 48.)

. (See complaint, preliminary statement.)

. Plaintiffs separate defendants into three different subclasses, to wit: subclass A, which includes those defendants currently in plaintiffs’ custody, held pursuant to a violation of postrelease supervision, where the postrelease supervision period is beyond the maximum expiration date for the class member’s determinate sentence, and where it appears that the documents in plaintiffs’ possession do not record a court-imposed term of postrelease supervision; subclass B, which includes those defendants who currently are in plaintiffs’ custody and whose period of postrelease supervision will, on or before June 1, 2009, extend beyond the maximum expiration date of the class member’s determinate sentence, and where it appears that the documents in plaintiffs’ possession do not record a court-imposed term of postrelease supervision; and subclass C, which includes those defendants currently in plaintiffs’ custody or released to parole on conditional or other release (but not exclusively postrelease supervision) and whose period of postrelease supervision will, on or before June 1, 2009, extend beyond the maximum expiration date of the class member’s determinate sentence, and where it appears that the documents in plaintiffs’ possession do not record a court-imposed term of postrelease supervision. Defendant Myers is alleged to be a member of subclass A. Defendant Smalls is alleged to be a member of subclass B. Defendant Negron is alleged to be a member of subclass C.

. Such additional time periods sought are continued custody of the defendants by plaintiffs for 60 to 90 days “from the date of this order,” pending action by the sentencing court, and continued custody or supervision thereafter if a sentencing court provides notice that it will either hold resentencing proceedings or is obtaining records to determine if resentencing proceedings are appropriate.

. By order to show cause, signed by this court on June 6, 2008, plaintiffs sought a temporary restraining order and preliminary injunction which encompassed the same relief sought in plaintiffs’ complaint. On June 6, 2008, this court denied plaintiffs’ application for a temporary restraining order. Based on postrelease supervision legislation that was subsequently signed into law, the plaintiffs later withdrew their motion seeking a preliminary injunction.

. (See L 1998, ch 1, §§ 15, 44; Penal Law § 70.00 [6]; § 70.45 [1].)

. The First, Third and Fourth Departments declined to follow Earley (supra; see People v Sparber, 34 AD3d 265 [1st Dept 2006]; People v Boyer, 36 AD3d 1084 [3d Dept 2007]; Matter of Garner v New York State Dept, of Correctional Seros., 39 AD3d 1019 [3d Dept 2007], lv granted 9 NY3d 809 [2007]; People v Crump, 302 AD2d 901 [4th Dept 2003]; People v Bloom, 269 AD2d 838 [4th Dept 2000]; People v Stanley, 309 AD2d 1254 [4th Dept 2003]). By contrast, the Second Department held that, where a sentencing court fails to impose a period of postrelease supervision, the Department of Correctional Services has no authority to add the same to an inmate’s sentence. (People v Wilson, 37 AD3d 855 [2d Dept 2007]; People v Noble, 37 AD3d 622 [2d Dept 2007].)

. (See People v Figueroa, 45 AD3d 297 [1st Dept 2007]; Matter of Dreher v Goord, 46 AD3d 1261, 1262 [3d Dept 2007]; People ex rel. Burch v Goord, 48 AD3d 1306 [4th Dept 2008].)

. According to Sparber (at 469-471),
“[t]he combined command of Penal Law § 70.00 (6) and § 70.45 (1) is clear. Each of these defendants’ sentences must include some period of PRS. Sections 70.00 (6) and 70.45 (1) are, however, silent with respect to how that mandatory PRS term is to be imposed. But that procedure is equally clear. CPL 380.20 and 380.40 (1) collectively require that courts ‘must pronounce sentence in every case where a conviction is entered’ .... Thus, the procedure by which these sentences were imposed was flawed because the PRS component was not ‘pronounced’ as required by CPL 380.20 and 380.40 . . .
“[A] clerk’s notations on a worksheet or a commitment sheet, which are presumably recorded outside of the defendant’s presence, do not satisfy the statutory mandate.
“Moreover, judicial endorsement of the clerk’s actions, through any method other than pronouncement in the defendant’s presence, could not cure the sentencing courts’ PRS errors.” (Citations omitted.)

. This legislation was signed into law on June 30, 2008, only 26 days after the filing of the complaint by plaintiffs.

. Pursuant to Correction Law § 601-d (1), an individual is deemed a “designated person” if the commitment order that accompanied such person does not indicate imposition of any term of postrelease supervision; provided, however, that if such agency with custody of or supervision over such person has the sentencing minutes that show that a term of postrelease supervision was actually pronounced at sentence, such person shall not be deemed a designated person.

. The defendant may consent to extend the time periods specified in paragraphs (c) and (d) of subdivision (4). The People may apply to the court for an extension of 10 days on the basis of extraordinary circumstances that preclude final resolution within such period of the question of whether the defendant will be resentenced.

. The Court of Appeals in Garner explicitly held that the sentencing court can resentence a defendant under these circumstances when it stated, “[o]ur holding here is without prejudice to any ability that either the People or DOCS may have to seek the appropriate resentencing of a defendant in the proper forum.” (Garner, 10 NY3d at 363 n 4.) In Sparber, the Court of Appeals specified that when faced with a defendant who is still serving his sentence, and who on direct appeal challenges the legality of his sentence, the appropriate remedy is to remand for resentencing to correct the illegality. (Sparber, 10 NY3d 457 [2008].)

. At oral argument with respect to the preliminary injunction, plaintiffs advised the court that it was in possession of the necessary documents to *816 determine if postrelease supervision was improperly imposed for at least 50% of those in subclass A.

. (Plaintiffs’ mem of law, dated Sept. 19, 2008, at 4.)

. (Plaintiffs’ mem of law, dated Sept. 19, 2008, at 3.)

. Plaintiffs allege other questions have arisen as a result of the 2008 legislation, including (a) would the termination of custody or supervision frustrate the State’s right to seek resentencing to a period of postrelease supervision; (b) how does resentencing affect custodial/supervisory status; (c) does the State have the right to seek resentencing of those who are no longer in custody or under supervision and can the sentencing courts compel defendants to appear for resentencing; (d) does the State have the right to seek resentencing if the legislated time frames cannot be met; (e) does the State have the right to have defendants, convicted after pleas for offenses subject to postrelease supervision terms, but sentenced illegally, sentenced as predicate felons, even if the resentencing postdates the subsequent conviction? (Plaintiffs’ mem of law, dated Sept. 19, 2008, at 6-7.)

. Plaintiffs also claim that the court should clarify that article 78 and habeas litigation brought by defendant class members can be resolved by the Correction Law § 601-d courts, so as to reduce the burden on other courts.

. “Justiciability . . . refers, in the broad sense, to matters resolvable by the judicial branch of government as opposed to the executive or legislative branches or their extensions” (New York County Lawyers’ Assn, v State of New York, 294 AD2d 69, 72 [1st Dept 2002], quoting Jiggetts v Grinker, 75 NY2d 411, 415 [1990]).

. CPLR 3001 provides,

. (Plaintiffs’ mem of law at 6-7.) The more compelling question plaintiffs pose is whether they can maintain custody of any defendant during the pendency of resentencing proceedings. This situation seems to only apply to those members of the potential subclass A, which include those defendants currently in plaintiffs’ custody, held pursuant to a violation of postrelease supervision, where the postrelease supervision period is beyond the maximum expiration date for the class member’s determinate sentence, and where it appears that the documents in plaintiffs’ possession do not record a court-imposed term of postrelease supervision. Yet, other than identifying the defendant Myers as an alleged member of subclass A, plaintiffs allegations are hypothetical. Plaintiffs further fail to identify any other circumstance or defendant to whom this question might apply. In any event, there is no provision in Correction Law § 601-d authorizing the court to detain a “designated person” pending the institution or outcome of a section 601-d resentencing proceeding.

. Moreover, the 2008 postrelease supervision legislation, which was signed into law on June 30, 2008, renders plaintiffs’ action moot. (Matter of Magee v Rocco, 158 AD2d 53 [3d Dept 1990]; Campbell v Blum, 91 AD2d 937 [1st Dept 1983]; Rubman v Waller, 118 Misc 2d 116 [Civ Ct, NY County 1983].) When the complaint was filed, plaintiffs sought to avoid a public safety crises that would occur through the mass release of violent felons into the community without supervision. Plaintiffs also alleged that the decisions in Garner and Sparber would result in a “crises in the courts.” While there was no evidence of any crises occurring in the courts before the postrelease supervision legislation, the passage of the same has dissipated the potential for any such crises. Notably, the relief sought by plaintiffs in the application for a preliminary injunction was the same as the relief sought in the complaint. Based on the fact that the postrelease supervision legislation encompassed the relief plaintiffs sought in their preliminary injunction, plaintiffs withdrew the same.

. The court rejects plaintiffs’ argument that, since the defendants have commenced their own class actions in federal court seeking declaratory and monetary relief arising out of illegal sentences to postrelease supervision terms, defendants have conceded that this court has jurisdiction to declare the rights of the parties to the resentencing mandates and initiatives.

. At the oral argument of the plaintiffs’ motion seeking a preliminary injunction, which took place on June 20, 2008, plaintiffs, through counsel, candidly stated that plaintiffs have not identified all the defendant class members, and that plaintiffs do not know which defendants should be released or not. Thus, plaintiffs request that all defendants he held. (See transcript of oral argument, dated June 20, 2008, at 20, 37.)