(May 21, 1998)

■ In the Matter of ROBERT LYLES, a Person Alleged to be Incapacitated. DAVID B. SKINNER, Appellant; ROBERT L. GELTZER, Respondent. [673 NYS2d 122] —Order, Supreme Court, New York County (Louis York, J.), entered April 7, 1997, to the extent it discharged respondent from any and all further responsibility in this matter, unanimously affirmed, without costs. Order and judgment (one paper), same court and Justice, entered April 7, 1997, which granted respondent recovery of his compensation from petitioner, unanimously reversed, on the law, without costs, the judgment vacated, and such recovery is denied.

Mr. Lyles was admitted to New York Hospital as a patient in June 1995. Two months later, petitioner sought the appointment of a special guardian for the purpose of marshaling the allegedly indigent patient's assets, obtaining Medicaid eligibility and securing his placement in a skilled nursing facility. In November, the court appointed respondent, an attorney, to be special guardian for the purpose of marshaling the patient's assets, making inventory of his property, placing him in a group home, seeing to it that his Social Security checks were

paid to his personal account at the home and arranging for appropriate medical care. In the order of appointment, petitioner's proposed decretal, whereby the special guardian would waive compensation for his services, was stricken by the court.

By September 1996, after the patient had been transferred to the Amsterdam Nursing Home, respondent moved for discharge from his duties as special guardian, and for compensation from petitioner for his services ($7,913.35) and disbursements ($89.60). Petitioner opposed on the ground that there is no statutory authority requiring a hospital to compensate a special guardian. The IAS Court reduced and fixed respondent's fee at $5,500, discharged him from his duties, and ordered petitioner to pay the fee. Petitioner appeals.

While we take no position as to the precise valuation, respondent is undoubtedly deserving of some compensation for his services. There is no indication that he undertook this assignment *pro bono*. Indeed, the court's deletion, in the appointment order, of a proposed waiver of respondent's compensation might only have bolstered the anticipation that his services would be rewarded. The question is—by whom?

Respondent's accomplishment benefited not only his indigent ward, but petitioner as well. But even though the statute governing such proceedings authorizes the court to "approve a reasonable compensation for the special guardian" (Mental Hygiene Law § 81.16 [b]), that provision is devoid of any inference that the hospital must bear the costs of the special guardian. This is indeed a case that cries out for a novel solution. But while we acknowledge the IAS Court's effort to meet that challenge, we are constrained to rule that the judicial remedy exceeded the court's authority.

In contrast to the statute's silence as to the source of a special guardian's compensation, the Legislature specifically provided that the petitioner may be required to pay the compensation of other key representatives at the proceeding, viz., the court evaluator (§ 81.09 [f]) and/or legal counsel assigned to assist the incapacitated person (§ 81.10 [f]), but only where the petition is *denied*. Careful analysis of the statute reveals that this is not an adverse reflection on the prospective special guardian vis-à-vis these other representatives. Rather, the Legislature was clearly cautioning those who would bring a frivolous petition, or one motivated by avarice, that they might very well have to bear the financial burden of the proceeding. It stands to reason that where a petition is denied, there never is any guardian appointed who requires compensation (as compared with a court evaluator and legal counsel, whose services are

required during the petitioning process). By contrast, this was not a contested proceeding; the parties—including Mr. Lyles—were in agreement that the appointment of a special guardian was in the best interests of all concerned. (The only debate at the hearing was over the type of facility into which the ward should be placed.) Thus, the statutory references to a petitioner bearing some of the costs of the appointment process are not analogous to the instant situation.

Furthermore, our review of the legislative history of article 81 of the Mental Hygiene Law reveals that the Legislature was well aware of the problem of funding for publicly appointed guardians of indigent incapacitated persons, but chose not to provide a remedy. The legislative silence was thus intentional (*Pajak v Pajak*, 56 NY2d 394, 397), and does not create a vacuum inviting judicial creativity (McKinney's Cons Laws of NY, Book 1, Statutes § 74). Concur—Wallach, J. P., Tom, Mazzarelli and Saxe, JJ.