(March 20, 2003)

■ In the Matter of VERNA EGGLESTON, Appellant. WALI MUHAMMED, Appellant. [757 NYS2d 24] —Order, Supreme Court, New York County (Phyllis Gangel-Jacob, J.), entered May 29, 2002, which summarily dismissed the petition for an appointment of a guardian under article 81 of the Mental Hygiene Law, unanimously reversed, on the law and the facts, without costs, the petition reinstated, and the matter remanded for further proceedings.

Under the circumstances of this case, we would reverse and remand for a hearing. Petitioner Commissioner commenced this proceeding on behalf of respondent under article 81 of the Mental Hygiene Law seeking the appointment of a guardian. The petition alleged that respondent was 69 years old, resides alone in a one-bedroom rental unit at West 80th Street, and is incapacitated in that he is unable to provide for his personal needs and property management and fails to adequately understand and appreciate the nature and consequences of his inability. The petition further alleged that he is unable to perform daily activities, such as housekeeping, banking, arranging for medical care and money management, without assistance.

Respondent was referred to Adult Protective Services (APS) because he faced a holdover eviction. The record indicates that for about three years, respondent had been a subtenant of one Gilbert Nunez in H.P.D. housing for which Nunez was the tenant of record. Nunez apparently disappeared and the landlord commenced a holdover proceeding against the tenant and respondent on the basis of an illegal tenancy. On or about May 31, 2000, the landlord and respondent entered a stipulation of

settlement whereby respondent consented to a judgment of possession and agreed to vacate by September 30, 2000, until which time the warrant of eviction was stayed. Housing Court appointed a guardian ad litem for respondent in connection with the holdover proceeding. When the warrant was about to be executed, the landlord and the guardian ad litem entered another stipulation of settlement whereby the matter was adjourned to April 15, 2002 for APS to file the present article 81 proceeding. APS concluded that respondent was incapable of relocating without assistance and lacked insight into his condition or the consequences of his actions. Respondent apparently was uncooperative when APS tried to secure alternative housing for him.

The Commissioner of Social Services then filed the present petition seeking appointment of a guardian under article 81 of the Mental Hygiene Law to aid respondent in connection with finding, and keeping, housing. These were the basic goals, although the petition's boilerplate phrasing seeks numerous additional powers. In relevant part, the petition alleged that respondent's sole income is about $651.98 per month in combined Social Security and supplemental Social Security, that he has no known savings and that he owns no real estate. He also seems to lack family or friends to whom APS can turn.

A psychiatric evaluation diagnosed respondent as profoundly and chronically depressed, and concluded that the depression impaired his motivation, concentration and even his diction. The psychiatrist noted that respondent's apartment was dirty, deteriorated and cluttered. He also concluded that as a consequence of his mental illness, he has been unable to make alternative plans, has refused to enter outpatient psychiatric treatment, and that there was no indication that he could independently make decisions regarding his condition. The report concluded that respondent had a poor prognosis. A certified social worker appointed as court evaluator also submitted a report. That report reiterated many of these factors. Respondent also submits an "affirmation" pro se (though with legal help) in which, in boilerplate fashion, he makes several similar points.

These various allegations at least present a prima facie case for the appointment of a guardian, though further adjudication would be needed to make findings as to the merits.

The transcript of the May 23, 2002 proceeding which resulted in the dismissal dealt with two main issues: whether respondent should be represented by counsel, and whether sufficient proof was presented for the appointment of a guardian. The

court concluded that the petition lacked merit and, on that basis, declined to accommodate respondent's request for counsel.

The record indicates that the court evaluator had recommended that counsel be appointed, and that respondent had made such a request, for purposes of the article 81 proceeding. The Department of Social Services (DSS) noted that the medical report indicated respondent's psychiatric and medical difficulties and that the conclusion to be drawn, at least preliminarily, was that respondent failed to understand the extent of the eviction proceeding and that if he did not receive assistance with relocating, he likely would end up homeless. In particular, a guardian would not only help respondent relocate, but would help manage his finances to ensure future rent payments were kept up. The court evaluator noted that respondent had told her several times that he really wanted to have counsel appointed insofar as he could not understand what was occurring.

The court concluded that there was no prima facie showing for the appointment of a guardian and dismissed the petition without a hearing.

The most that can be ascertained from the present record is that: respondent personally indicated that he did "not fully" understand the proceeding; he consistently requested counsel; he very likely was indigent; he was being evicted; he suffered from depression and to some extent was cognitively impeded, even if he was not psychotic; preliminary medical evidence indicated that his mental illness was chronic and impaired his judgment; and he seemed unable to take the step of relocating or otherwise dealing with his predicament. All of these factors could have been more fully addressed and resolved with a hearing. Apparently, DSS was prepared to call the psychiatrist to testify that day.

Initially, upon respondent's request and in view of these facts, the court should have appointed a guardian (Mental Hygiene Law § 81.16 [c]) or granted a short adjournment to allow respondent to hire counsel. An attorney representing respondent would have more effectively presented respondent's own position and, critically, would have more effectively explained the proceeding to respondent.

Second, in view of this record and pursuant to the statute, a hearing was required as a preliminary to the court making findings. Notably, no party objected to a hearing. Moreover,

DSS and respondent, represented by the Mental Hygiene Legal Service, both appeal from the order of dismissal, and both urge the necessity of a hearing. Medical testimony could have been received and evaluated. Although the court correctly noted that psychosis had not been diagnosed, potentially disabling chronic depression was diagnosed. One might speculate that most depressed people can make decisions and care for themselves without the need for a guardian but one may further observe that some depressed people cannot. Without the benefit of more complete medical evidence, and on the basis of the medical evidence and the social worker's report already submitted, this issue cannot be properly addressed.

Moreover, a hearing would have accommodated the goals of article 81, enacted within the past decade to provide a more flexible scheme for aiding persons with impeded capacities than was available under the prior, more rigid, conservatorship provisions that were thereby replaced. A showing of complete incompetence is not required. Rather, the new statute contemplates evaluating whether a respondent has particular incapacities and, if so, tailoring more limited guardianship powers to fit those needs (*see generally Matter of Maher*, 207 AD2d 133, 137-139 [1994], *lv denied* 86 NY2d 703 [1995]; Law Rev Commn Comments, McKinney's Cons Laws of NY, Book 34A, Mental Hygiene Law § 81.02, at 258-261). Although section 81.11 (a), as phrased, requires a hearing prior to a determination that a guardian appointment is necessary—an understandable due process requirement in view of the liberty interest involved—section 81.11 (b) makes clear that the hearing requirement is not restricted to occasions when a guardian is to be imposed on a possibly unwilling respondent. Rather, section 81.11 (b) states clearly that "any party" to an article 81 proceeding *shall* have the right to present evidence, call witnesses, cross-examine witnesses and be represented by counsel. Concur—Buckley, P.J., Nardelli, Tom, Mazzarelli and Ellerin, JJ.