■ In the Matter of JASON A. TURNER, as Commissioner of Social Services, for Appointment of a Guardian of the Person and Property of THELMA WILLIAMS, a Person Alleged to be Incapacitated. WINSTON S. WATERS, Appellant; IRA SALZMAN et al., Respondents. [763 NYS2d 571] —Order, Supreme Court, New York County (William McCooe, J.), entered January 30, 2003, which, to the extent appealed from as limited by the brief,

found that the guardian of the person and property of the incapacitated person, Thelma Williams, was personally responsible for a $3,000 accountant's fee and a fee of $4,500 for the court-appointed guardian ad litem, unanimously reversed, on the law and the facts, without costs, that portion of the order which directs that the fees be paid by appellant vacated, and it is ordered that the fees be paid out of the funds of Ms. Williams.

The New York City Commissioner of Social Services commenced this proceeding seeking the appointment of a guardian for the property management and personal needs of Thelma Williams, Ph.D., in May 2000. By order entered July 26, 2000, Justice Eileen Bransten appointed Winston Spencer Waters, Esq. to be Ms. Williams's guardian. The order of appointment provided, inter alia, that Waters "[r]etain a certified public accountant to prepare tax returns and the annual accountings and pay such certified public accountant annual fees not in excess of five thousand dollars ($5,000.00) without seeking further of this Court."

Waters duly performed his guardianship duties, e.g., he conducted the initial investigation of Ms. Williams's home, visited weekly, hired a geriatric worker and around-the-clock home care workers, handled her Social Security and pension benefits, renovated her apartment, purchased new clothing, cleaned useable old clothing which had been left unlaundered, balanced her portfolio and retained an accounting firm to review her securities transactions.

Waters submitted an application for interim fees in December 2000, and in response, the court examiner, while acknowledging that the hourly fee of the attorney who had contested the petition for guardianship and those of the court evaluator were actually higher than those sought by Waters, advised the court that he was troubled by Waters's application. Justice Bransten subsequently found Waters's application legitimate, and the court examiner's objections "offensive." The foregoing prompted Waters to move for the court examiner's disqualification on the ground that he was biased and unable to be impartial. Justice Bransten, in a decision dated January 15, 2002, denied the motion despite finding Waters's services "exemplary" and the court examiner's accusations unfounded.

Waters thereafter moved, by order to show cause, to resign as guardian for Ms. Williams, citing the strain on his practice and personal life. Waters also averred that in light of the conflict between himself and the court examiner, it was not in Ms. Williams's best interests that he continue. Waters also offered to waive any fees for services rendered since his prior request for interim fees, as well as any expenses incurred.

The court appointed Ira Salzman to be the guardian ad litem/ court evaluator, and in his report, Salzman recommended the approval of the final accounting, and that an order be entered permitting Waters's resignation and discharge, but urged that a hearing be held regarding certain discrepancies in the final accounting. Salzman further opined that the fees in question should not be the responsibility of Waters. Justice McCooe, by order dated May 6, 2002, referred the matter to a referee to hear and report, and Special Referee Leslie Lowenstein, in a report dated September 23, 2002, found that Waters had "fully and satisfactorily accounted for the execution of his office," and that he be allowed to resign.

Supreme Court subsequently granted Waters's motion to resign and held, in pertinent part: "The Guardian ad Litem specified nine objections to the final accounting which he found to have been fully resolved at the time of the hearing. The Special Referee found that the 'Guardian has fully accounted for the activities and execution of his office.' The issue of his past fees has already been passed upon by another Judge of co-ordinate jurisdiction and he is waiving any further fees. The guardian shall be personally responsible for the accountant's bill in the sum of $3,000 and the fee of the Guardian ad Litem in the sum of $4,500 under the circumstances of this proceeding."

Waters now appeals from that portion of the order assessing the fees of the accountant and the guardian ad litem against him. We agree that such assessment was improper, and, accordingly, reverse.

Mental Hygiene Law § 81.37 (a) provides that "[t]he court appointing a guardian may allow the guardian to resign or may suspend the powers of the guardian." Notably, this subdivision contains no indication that a guardian's resignation warrants the imposition of a fee or surcharge, and we must conclude that the Legislature's failure to include the matter within the scope of the statute is an indication that the exclusion was intentional (*Pajak v Pajak,* 56 NY2d 394, 397 [1982]; *see also Matter of Lyles,* 250 AD2d 488, 490 [1998] ["(t)he legislative silence * * * does not create a vacuum inviting judicial creativity * * *"]).

Moreover, Mental Hygiene Law § 81.28, entitled "Compensation of guardian," provides:

"(a) The court shall establish, and may from time to time modify, a plan for the reasonable compensation of the guardian. The plan for compensation of the guardian may be similar to the compensation of a trustee pursuant to section two thousand

three hundred nine of the surrogate's court procedure act; however, the plan must take into account the specific authority of the guardian to provide for the personal needs and/or property management for the incapacitated person.

"(b) *If the court finds that the guardian has failed to discharge his or her duties satisfactorily in any respect, the court may deny or reduce the compensation which would otherwise be allowed.*" (Emphasis added.)

Mental Hygiene Law § 81.35 states, in relevant part: "Upon motion, the court appointing a guardian may remove such guardian when the guardian fails to comply with an order, is guilty of misconduct, or for any other cause which to the court shall appear just. * * * The Court may fix the compensation of any attorney or person prosecuting the motion. It may compel the guardian to pay personally the costs of the motion if granted."

The reference in Mental Hygiene Law § 81.28 (a) to SCPA 2309, which establishes a compensation schedule for trustees and which requires that trustees be paid commissions from the trust, warrants the conclusion that the drafters contemplated that a guardian's compensation would come from the incapacitated person's estate. In addition, the current article 81 of the Mental Hygiene Law replaced former articles 77 (conservatorship) and 78 (committee). A review of the interpretation afforded the former articles reveals that the guardian's compensation must be paid out of the incapacitated person's estate (*see Matter of Grinker,* 172 AD2d 393 [1991]). The exceptions to the foregoing are found in Mental Hygiene Law § 81.28 (b) and § 81.35, which both address situations where the guardian has either failed to discharge his duties satisfactorily or must be removed for cause.

Here, Special Referee Lowenstein specifically found that Waters "fully and satisfactorily accounted for the execution of his office" and the record fully supports that conclusion. Indeed, Justice Bransten, after noting the exceptional job performed by Waters in the face of extremely difficult and demanding circumstances, went on to characterize the court examiner's exceptions as "totally unfounded," "incomprehensible," "gratuitous," "unconscionable" and "unseemly."

In view of the satisfactory manner in which Waters performed his duties, we find that it was error to reduce his compensation, given that such a reduction would have to have been based on a contrary finding, which, here, simply does not exist (*see Cascade Mushroom Co. v Aux Delices Des Bois,* 293 AD2d 305, 306 [2002]). Concur—Nardelli, J.P., Tom, Andrias and Lerner, JJ.