■ In the Matter of KURT T., a Person Alleged to be Incapacitated. FRIEDA J., Respondent-Appellant; KURT T., Appellant-Respondent. [881 NYS2d 688]—

Spain, J.P. Cross appeals from an order of the Supreme Court (Zwack, J.), entered October 2, 2007 in Rensselaer County, which, among other things, dismissed petitioner's application, in a proceeding pursuant to Mental Hygiene Law article 81, to appoint a guardian for the personal needs and property management of respondent.

In October 2005, respondent suffered a stroke resulting in expressive aphasia and dysarthria, which impact his ability to retrieve and articulate words, but he remains able to understand anything asked of or said to him. In addition, as a residual effect of the stroke, respondent suffered right-sided hemiparesis, or weakness on the right side of his body. He also suffered a minor stroke in 2004 and a heart attack in August 2006, and has lived in a nursing home since the 2005 stroke.

In 2003, respondent granted petitioner, his cousin, a durable power of attorney and, in his will, made her the sole beneficiary of his estate; petitioner began exercising the power of attorney and acting as respondent's appointed health care proxy following the 2005 stroke. In 2006, however, respondent revoked both the power of attorney and health care proxy and authorized his long-time neighbor to act as his power of attorney and health care proxy. Shortly thereafter, petitioner commenced this Mental Hygiene Law article 81 proceeding seeking the appointment of a guardian for respondent's person and property, which petitioner alleged to be valued at approximately $3.7 million.

By order to show cause, Supreme Court (Ceresia, Jr., J.) appointed a court evaluator and counsel for respondent, and issued a stay prohibiting the neighbor from exercising her power of attorney. In his report, the court evaluator recommended appointment of a guardian based upon respondent's admission that he needed help with bathing, eating and managing his financial affairs, and his recognition that he needed a guardian. Following a bench trial during which there was testimony that

respondent's condition had improved and he indicated that he no longer consented to the appointment of a guardian, Supreme Court (Zwack, J.) dismissed the petition, lifted the stay on the neighbor's power of attorney, and ordered that respondent pay 80% of the total combined costs of his court-appointed counsel fees, the court evaluator's fees and petitioner's counsel fees, and that petitioner be financially responsible for the balance of those fees.[1] The parties now cross-appeal.

Initially, we reject petitioner's argument that Supreme Court improperly denied her request to appoint a guardian to manage respondent's property.[2] When, as in this case, an alleged incapacitated person (hereinafter AIP) does not consent to the appointment of a guardian for his or her property, the court must undertake a two-pronged analysis: first, the court must determine whether "the appointment is necessary to manage the property or financial affairs of that person, and, second, . . . [whether] the individual is 'incapacitated' as defined in Mental Hygiene Law § 81.02 (b)" (*Matter of Maher*, 207 AD2d 133, 139-140 [1994], *lv denied* 86 NY2d 703 [1995]; *see* Mental Hygiene Law § 81.02 [a]; *Matter of Joseph V.*, 307 AD2d 469, 470 [2003]). A determination of incapacity, in turn, must be supported by "clear and convincing evidence that the person is likely to suffer harm because of an inability to provide for . . . property management, and that the person possesses an inadequate ability to understand and appreciate the consequences of such inability" (*Matter of Daniel TT.*, 39 AD3d 94, 98 [2007]; *see* Mental Hygiene Law § 81.02 [b]; *Matter of Maher*, 207 AD2d at 140).

Here, assuming without deciding that the first prong of the test was satisfied, we agree with Supreme Court that petitioner failed to meet her burden of establishing that respondent is incapacitated (*see* Mental Hygiene Law § 81.12 [a]). While it is undisputed that respondent has functional limitations which affect his ability to manage his property, the record lacks clear and convincing evidence that respondent is likely to suffer harm as a result of these limitations or that he is incapable of understanding and appreciating his limitations. Although petitioner argues that respondent's assets have been dissipated

1. The applications for fees amounted to $1,408 for respondent's court-appointed counsel, $13,091.74 for the court evaluator and $46,109.75 for petitioner's counsel. Supreme Court approved the requested fees and respondent was directed to pay 80% of this amount, or $48,487.59, in addition to $35,660—the total cost of his privately retained attorney.

2. Petitioner's brief states that she is not challenging Supreme Court's denial of her request to appoint a guardian to manage respondent's personal needs; rather, she challenges only the court's decision that appointment of a guardian for respondent's property is not necessary.

due to his history of being "taken advantage of by other women [who] successfully exploited him," all of the transactions that she references predate respondent's alleged incapacitation due to his stroke, in some instances by five to six years. Indeed, it appears that petitioner's concerns derive more from her disagreement with respondent's choices than from any inability on his part to make such choices.

Further, while petitioner also relies on the neighbor's plans to purchase property from respondent while she held his power of attorney, the record is devoid of evidence that respondent was coerced or manipulated in any way. Indeed, although we agree that it would have been unethical for the neighbor to use her power of attorney to complete the transaction, the record reflects that negotiations to purchase the property predated respondent's stroke and petitioner failed to establish that the contemplated transaction was not in accordance with respondent's wishes or his best interests.

While petitioner places great emphasis upon respondent's inability to explain the details of certain financial transactions, respondent's testimony in that regard is entirely consistent with his diagnosis of expressive aphasia and dysarthria. The record establishes, however, that respondent does not suffer from any condition that affects his ability to *comprehend* information. Indeed, his social worker testified that he is aware of his assets, willing to seek the assistance of an attorney in managing those assets and that he would not be harmed if a guardian were not appointed. The court evaluator also indicated in his report that respondent appreciated his limitations in managing his property. Under these circumstances, Supreme Court properly concluded that petitioner failed to prove by clear and convincing evidence the need for the appointment of a guardian (*see Matter of Maher*, 207 AD2d at 141-142; *cf. Matter of Karen P.*, 254 AD2d 530, 531-532 [1998]).

We agree with respondent, however, that in light of the dismissal of the petition and taking into account all the relevant considerations, it was improvident for Supreme Court to direct respondent to pay 80% of the fees of petitioner's attorney.[3] When, as here, a petition is dismissed for lack of merit, the court may direct that such fees be paid either by the petitioner or the AIP (*see* Mental Hygiene Law § 81.09 [f]; § 81.16 [f]; *Matter of Lukia QQ.*, 27 AD3d 1021, 1023 [2006]; *Matter of Albert S.*, 300 AD2d 311, 311 [2002], *lv denied* 99 NY2d 511 [2003];

---

**3.** Respondent does not challenge the total amount of any of the fees assessed, but asserts only that the apportionment of 80% of the cost to him was improper.

*Matter of Geer*, 234 AD2d 939, 939 [1996]). The purpose of the statute permitting shifting of fees to the petitioner is to "caution[ ] those who would bring a frivolous petition, or one motivated by avarice, that they might very well have to bear the financial burden of the proceeding" (*Matter of Lyles*, 250 AD2d 488, 489 [1998]). Hence, relevant factors in determining the proper apportionment of fees when a petition is dismissed include whether there is evidence that the petitioner was motivated by avarice or possible financial gain, whether the petitioner has acted in good faith in commencing the petition, the sufficiency of the petition on its face, the relative assets or indigence of the petitioner and the AIP, and any special circumstances that may exist, such as benefits to the AIP that may have resulted from the filing of the petition (*see Matter of Schneider v Engelmayer*, 49 AD3d 348, 348 [2008]; *Matter of Ida Q.*, 11 AD3d 785, 786 [2004]; *Matter of Albert S.*, 300 AD2d at 311; *see also Matter of Spear*, 1 Misc 3d 910[A], 2004 NY Slip Op 50014[U], *3 [2004]; *Matter of Chachkers [Shirley W.]*, 159 Misc 2d 912, 916 [1993]).

In our view, the instant petition was not wholly frivolous, particularly given respondent's admission to the court evaluator after this proceeding was commenced that a guardian was necessary. Nevertheless, there is evidence that petitioner's actions were motivated by avarice or possible financial gain. First, as explained above, it appears that petitioner's primary motivation was choices that respondent made prior to his stroke and alleged incapacity. Morever, while acting pursuant to the power of attorney and albeit allegedly to protect respondent, she improperly placed $187,000 generated from her sale of respondent's stock into an account with her and her husband's name on it. She also sold respondent's camper—his home prior to his stroke—without first consulting him. Finally, while acting pursuant to the health care proxy, petitioner canceled several of respondent's medical appointments—including speech therapy and the removal of a catheter—against his wishes and solely out of a concern for cost, despite the fact that respondent had sufficient assets to fund these treatments. In light of the foregoing, as well as the absence of any indication that petitioner cannot afford to pay her cost of the litigation, we conclude that petitioner must pay the full amount of her own legal fees (*see Matter of Crump [Parthe]*, 230 AD2d 850, 851 [1996]; *Matter of Chachkers [Shirley W.]*, 159 Misc 2d at 916; *cf. Matter of Albert S.*, 300 AD2d at 311). Finally, under the circumstances and giving due consideration to the valuable service provided by the court evaluator to respondent, we find no abuse of discretion in the court's direction that respondent pay 80% and petitioner

pay the remaining 20% of the court evaluator's fee and his court-appointed counsel's fees (*see* Mental Hygiene Law § 81.10 [f]; *Matter of Crump [Parthe]*, 230 AD2d at 851).

Kavanagh, Stein and McCarthy, JJ., concur. Ordered that the order is modified, on the facts, by reversing so much thereof as directed respondent to pay 80% of the total fees awarded to petitioner's counsel; petitioner's application that respondent pay her counsel fees is denied; and, as so modified, affirmed.