Matter of Elizabeth TT. (Suzanne YY.--Elizabeth ZZ.) (2019 NY Slip Op 06667)





Matter of Elizabeth TT. (Suzanne YY.--Elizabeth ZZ.)


2019 NY Slip Op 06667


Decided on September 19, 2019


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: September 19, 2019

528175

[*1]In the Matter of Elizabeth TT., Alleged to be an Incapacitated Person. Suzanne YY., Appellant; Elizabeth TT., Respondent. Elizabeth ZZ., Respondent.

Calendar Date: August 21, 2019

Before: Garry, P.J., Egan Jr., Clark, Mulvey and Pritzker, JJ.


Scolaro Fetter Grizanti & McGough, PC, Syracuse (Douglas John Mahr of counsel), for appellant.
The Halpin Firm, Montour Falls (Robert L. Halpin of counsel), for Elizabeth TT., respondent.
Hamm & Roe, LLP, Elmira (Denice A. Hamm of counsel), for Elizabeth ZZ., respondent.



Egan Jr., J.
Appeals from two orders of the Supreme Court (Guy, J.), entered June 26, 2018 in Chemung County, which, among other things, in a proceeding pursuant to Mental Hygiene Law article 81, granted respondent's motion to dismiss the petition.
Respondent is an 89-year-old widow and the mother of two daughters, petitioner and Elizabeth ZZ. Following the death of her husband in 2007, respondent sold her home in Pennsylvania and named petitioner as her power of attorney, health care proxy and executor of her will. Respondent thereafter alternated residing with each of her daughters at their respective homes for varying periods of time. In 2015, respondent was diagnosed with dementia and Alzheimer's disease and, since on or about December 2015 or January 2016, has resided at Elizabeth ZZ.'s residence in the Hamlet of Beaver Dams, Chemung County. Petitioner and Elizabeth ZZ. have an admittedly contentious relationship,[FN1] and, as of June 2016, petitioner claims that she was no longer able to contact and/or visit with respondent.
In April 2017, petitioner commenced this Mental Hygiene Law article 81 proceeding seeking, among other things, to be appointed guardian of the person and property of respondent, alleging that respondent has cognitive limitations that render her incapacitated and susceptible to the undue influence of Elizabeth ZZ. Petitioner also asserted a claim for visitation, alleging that Elizabeth ZZ. was intentionally obstructing her ability to visit or communicate with respondent. Supreme Court thereafter appointed a court evaluator (see Mental Hygiene Law § 81.09 [a]), assigned respondent counsel (see Mental Hygiene Law § 81.10) and, at the parties' initial appearance, respondent consented to an order of visitation providing petitioner with monthly visitation and regular telephone contact.[FN2] In December 2017, however, respondent, through counsel, withdrew her consent and refused any further visitation or telephone contact from petitioner. In May 2018, while the first petition was still pending, petitioner filed a second petition pursuant to Mental Hygiene Law article 81 again seeking, among other things, her appointment as guardian of the person and property of respondent, as well as an order directing respondent to undergo a neuropsychological evaluation. Supreme Court deemed the second petition a request to move forward with a hearing on petitioner's original petition and entered an order scheduling this matter for a hearing on May 30, 2018.
Prior to the hearing, respondent consented to undergo a neuropsychological evaluation; however, she subsequently withdrew her consent and refused to appear for said evaluation. Respondent moved to dismiss the petition and vacate the previously issued interim visitation orders. Petitioner opposed the motions and cross-moved for an order directing respondent to undergo a neuropsychological evaluation. On May 30, 2018, in lieu of a hearing, Supreme Court permitted oral argument on all three motions and, following oral argument,[FN3] granted respondent's motion to dismiss, determining, among other things, that respondent adequately understands and appreciates the nature of her current and potential future limitations and has adequate resources in place to address her personal and property needs. Supreme Court also denied petitioner's cross motion, determining that respondent could not be forced to testify at a hearing or undergo a neuropsychological evaluation, without her consent. Petitioner appeals.
Petitioner contends that Supreme Court erred in summarily dismissing the petition without conducting a hearing. We agree. Where, as here, "an alleged incapacitated person (hereinafter AIP) does not consent to the appointment of a guardian for his or her property, the court must undertake a two-pronged analysis: first, the court must determine whether the appointment is necessary to manage the property or financial affairs of that person, and, second, whether the individual is incapacitated as defined in Mental Hygiene Law § 81.02 (b)" (Matter of Kurt T., 64 AD3d 819, 821 [2009] [internal quotation marks, brackets and citation omitted]; see Mental Hygiene Law §§ 81.01, 81.02; Matter of Daniel TT., 39 AD3d 94, 98 [2007]). In determining whether such an appointment is necessary, the court must consider the report of the court-appointed evaluator (see Mental Hygiene Law §§ 81.02 [a] [2]; 81.09 [c]) and also assess the sufficiency and reliability of the AIP's available resources and whether he or she has plans in place for the management of his or her affairs that effectively obviates the need for the appointment of a guardian (see Mental Hygiene Law §§ 81.02 [a], 81.03 [e]; Matter of Daniel TT., 39 AD3d at 97; Matter of Isadora R., 5 AD3d 494, 494 [2004]; Matter of Maher, 207 AD2d 133, 139-140 [1994], lv denied 86 NY2d 703 [1995]). Such a determination must be based upon clear and convincing evidence that the AIP is likely to suffer harm because he or she is unable to provide for his or her own personal needs and/or property management and cannot adequately understand and appreciate the nature and consequences of such inability (see Mental Hygiene Law § 81.02 [b]).
Although Supreme Court determined, among other things, that respondent had put into place sufficient resources to adequately address her personal and property needs based upon her having executed various estate planning documents and chosen her preferred living arrangement at the residence of Elizabeth ZZ., we find that, in the absence of a hearing, Supreme Court's determination in this regard was premature. The Mental Hygiene Law specifically provides that, so long as the petition contains sufficient allegations of fact, a hearing is required in order for the trial court to determine whether the appointment of a guardian for an AIP is necessary (see Mental Hygiene Law § 81.11 [a]; Matter of Daniel TT., 39 AD3d at 98). Here, the petition alleges that respondent was diagnosed with Alzheimer's disease and dementia in 2015 and moved into Elizabeth ZZ.'s residence shortly thereafter. Respondent admits in her affidavit in support of her motion to dismiss that she is "past the point of being able to live safely on [her] own," that she has memory issues that prevent her from being able to remember things that she may have said or people or places that she visits on a regular basis, that she needs assistance with daily activities such as cooking, laundry and transportation and relies exclusively on Elizabeth ZZ. to take care of her finances.[FN4] Respondent's estate planning documents (i.e., a July 2016 power of attorney naming Elizbeth ZZ. as respondent's agent and a September 2016 irrevocable trust), meanwhile, were only executed after respondent had been diagnosed and during a time when petitioner alleges that Elizabeth ZZ. was exerting undue influence over respondent and affirmatively attempting to seclude respondent from petitioner and other family members.
The court evaluator acknowledged in both his report and subsequent status updates that respondent suffers from dementia and that her short term memory loss appears to be progressively declining such that her "clinical situation appears to be limiting her ability to make informed decisions about her personal, social and financial affairs." He also indicated that respondent is not generally aware of her finances and that she could not recall what checks that she writes on a monthly basis. With regard to petitioner's allegations of undue influence, the court evaluator specifically noted that, on several instances during his interviews with respondent, Elizabeth ZZ. would correct respondent's statements, and respondent "would repeatedly look to [Elizabeth ZZ. or Elizbeth ZZ.'s husband] or to [her attorney] for help in answering [his questions]." Petitioner also provided, among other things, certain recorded conversations with respondent wherein respondent indicated her preference to maintain a relationship with petitioner — despite her subsequent withdrawal of consent to visitation — as well as an affidavit from respondent's sister indicating that she has been likewise unable to contact respondent since she began permanently residing with Elizabeth ZZ.[FN5] Given the record before us, we find that the allegations set forth in the subject petition, as supplemented by the supporting affidavits affixed to the parties' motion papers and the court evaluator's report and subsequent status updates, create a genuine question of fact as to respondent's alleged incapacity, her ability to understand and appreciate the nature and consequences of her condition and functional limitations and whether the arrangements that have been put in place for her personal and property needs were the product of Elizabeth ZZ.'s undue influence such that petitioner adequately established her entitlement to a hearing (see Mental Hygiene Law §§ 81.02 [a] [2]; 81.11 [a], [b]; Matter of Daniel TT., 39 AD3d at 98; Matter of Loconti, 11 AD3d 937, 938 [2004]; Matter of Eggleston [Muhammed], 303 AD2d 263, 266 [2003]; Matter of Ruth TT., 267 AD2d 553, 554 [1999]).
With regard to the parameters of the hearing, we agree with Supreme Court's determination that respondent cannot be forced to undergo a neuropsychological evaluation and/or be compelled to testify against her own interests. Although the Mental Hygiene Law permits a court evaluator to retain "an independent medical expert where the court finds it is appropriate" (Mental Hygiene Law § 81.09 [c] [xvii] [7]), as well as to "apply to the court for permission to inspect records of medical, psychological and/or psychiatric examinations of the [AIP]" (Mental Hygiene Law § 81.09 [d]), contrary to petitioner's assertion, there is no corresponding statutory requirement for an AIP to abide by a court evaluator's recommendation that he or she undergo a neuropsychological evaluation to assess his or her present cognitive condition (cf. Matter of Aida C., 44 AD3d 110, 115-117 [2007]). Similarly, although Mental Hygiene Law § 81.11 (c) provides that the AIP must be present in order for the court to "obtain its own impression of the person's capacity" and make an independent assessment of the AIP, there is no corresponding requirement in Mental Hygiene Law article 81 that compels the AIP to testify at a hearing (see Matter of Allers [G.P.], 37 Misc 3d 418, 421-423 [Sup Ct, Dutchess County 2012]; Matter of A.G., 6 Misc 3d 447, 453 [Sup Ct, Broome County 2004]; see generally CPLR 4501; Rivers v Katz, 67 NY2d 485 [1986]; compare Matter of Aida C., 66 AD3d 1344, 1347-1348 [2009]; Matter of Aida C., 44 AD3d at 115).[FN6] Petitioner has other evidentiary avenues available to establish her burden of proving whether respondent is incapacitated, including calling lay witnesses, family members and any relevant experts (see Mental Hygiene Law § 81.11 [b]). Finally, with regard to visitation, inasmuch as respondent has not consented to the appointment of a guardian and no judicial finding of incapacity has yet been made, the issue of whether petitioner is entitled to an order imposing visitation and/or other meaningful contact with respondent is, at this point in the proceeding, premature (see Mental Hygiene Law § 81.16; see generally New York Pub. Interest Research Group v Carey, 42 NY2d 527, 531 [1977]; Hirschfeld v Hogan, 60 AD3d 728, 729 [2009], lv denied 14 NY3d 706 [2010]) and must await a determination from Supreme Court, following a hearing, as to whether respondent is, in fact, incapacitated and whether, under the circumstances, the appointment of a guardian is necessary (see Mental Hygiene Law §§ 81.11 [a]; 81.16 [c]).
Garry, P.J., Clark, Mulvey and Pritzker, JJ., concur.
ORDERED that the orders are modified, on the law, without costs, by reversing so much thereof as granted respondent's motion to dismiss the petition; matter remitted to the Supreme Court for further proceedings not inconsistent with this Court's decision; and, as so modified, affirmed.



Footnotes

Footnote 1: Petitioner and Elizabeth ZZ. both acknowledge a long-standing animosity toward one another. Elizabeth ZZ. admittedly does not permit petitioner to be physically present on her property for any purpose, including facilitating visitation with respondent.

Footnote 2: Supreme Court subsequently issued both an amended and a second amended visitation order, upon consent of the parties, continuing monthly visitation but reducing the frequency of telephone contact.

Footnote 3: Given respondent's withdrawal of consent to undergo a neuropsychological evaluation, the court evaluator, who initially recommended that respondent undergo such an evaluation, also withdrew his recommendation in this regard. At oral argument, however, the court evaluator again recommended that respondent undergo a clinical assessment of her cognitive abilities.

Footnote 4: In an affidavit, Elizabeth ZZ. acknowledges that she assists respondent with various activities of daily living, including making sure that she is adequately fed and clothed, has appropriate medical care, addresses personal hygiene issues and laundry and provides transportation. She also acknowledges that, since 2015, she assists with the management of respondent's finances.

Footnote 5: Petitioner also submitted two affidavits from respondent's son and stepdaughter in which they attest that Elizabeth ZZ. has a history of mentally and physically abusive behavior that make them fear for respondent's well-being.

Footnote 6: Nor has respondent waived any privileges or otherwise put her mental condition at issue.